# UNITED STATES OF AMERICA
## v.
## AUBREY JOSHUA, Appellant

[976 F.2d 844]

No. 91-3286

United States Court of Appeals
for the Third Circuit

October 5, 1992

STAPLETON, HUTCHINSON AND NYGAARD, *Circuit Judges*

JOHN H. BENHAM, III (argued), (WATTS, STREIBICH & BENHAM), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, *for appellant*

TERRY M. HALPERN, U.S. Atty., SUSAN R. VIA (argued), Asst. U.S. Atty., KIM L. CHISHOLM, Special Asst. U.S. Atty., Charlotte Amalie, St. Thomas, U.S. Virgin Islands, *for appellee*
Before:

## OPINION OF THE COURT

STAPLETON, *Circuit Judge*

The indictment in this case includes a charge of armed bank robbery, weapons charges in connection with the bank robbery, and a charge of possession of a firearm by a convicted felon. The defendant challenges the district court's refusal to sever the possession charge, and the fine and sentence imposed by the court.

## I.

In November 1990, a masked man robbed the First Pennsylvania Bank on St. Thomas, Virgin Islands at gun point. According to witnesses, the robber carried a silver, semi-automatic pistol with which he threatened bank employees and customers. He pointed the pistol as well as the revolver that he had taken from the bank guard at the heads of several tellers, ordering them to stuff money into a brown canvas bag.

A witness saw the robber leave the bank, remove his mask, and drive off in a white car. He noted the car's license number which was immediately provided to the Virgin Islands Police through the bank manager. A squad car pursued the vehicle on a high speed chase through a residential area. Minutes later, after he had sideswiped several unfortunate cars in his path, the robber lost control of his vehicle, and it flipped. One of the officers later testified that, as he and his partner approached the car, the robber reached for his nine-millimeter pistol, which the officer managed to secure before the robber reached it. The police found in the car the bank guard's revolver and a brown bag containing approximately $19,000. A number of nine-millimeter ammunition rounds and a mask were

found in the suspect's pockets. The apprehended suspect was later identified as the defendant, Aubrey Joshua.

Joshua was charged in a four count indictment as follows: Count One—armed bank robbery, 18 U.S.C. § 2113(a) & (d);[1] Count Two—use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1); Count Three—receipt of a firearm with an obliterated serial number, 18 U.S.C. §§ 922(k) & 924(a)(1)(B); and Count Four—possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) and § 924(e).[2]

Prior to trial, Joshua moved to sever the trial of Count Four of the indictment from the remaining counts. He feared that exposure of the jury to evidence of his prior criminal record might unfairly influence its decision concerning the first three counts. The government acquiesced in this motion. The court denied the motion but ordered a bifurcated trial. The jury first heard evidence and delib-

---

[1] 18 U.S.C. 2113 provides in relevant part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care of, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . .

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

[2] 18 U.S.C. 922(g) provides:

It shall be unlawful for any person—

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. 924(e) provides:

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not more than fifteen years. . . .

erated concerning the first three counts, and then heard evidence of the defendant's criminal record and deliberated concerning Count Four.

After the presentation of the evidence on the first three counts, the jury was unable to reach verdicts on Counts One and Two and returned a verdict of not guilty on Count Three. The government then tendered to the jury a stipulation that the defendant was a convicted felon. After closing arguments and instructions on Count Four, the jury returned a verdict of guilty.

Before Counts One and Two could be retried, Joshua and the government entered a plea agreement under which they exchanged a guilty plea to armed bank robbery for a dismissal of the charge of use of a firearm during a crime of violence. The court sentenced Joshua to 300 months in prison for the armed bank robbery charge. On Count Four, he received a sentence of 365 months in prison. The court also assessed a $3,000 fine and ordered that the sentences of imprisonment be served concurrently.

The district court had jurisdiction under 48 U.S.C. § 1612(a). We review the final judgment of conviction and sentence pursuant to 28 U.S.C. § 1291.

## II.

 Joshua's first argument[3] is that the district court erred in denying his uncontested motion to sever Count Four—felon in possession of a firearm—from the remaining counts of the indictment.[4] Severance decisions under Rule 14 require the district court to weigh the potential for prejudice to the defendant from joinder against the conservation of judicial resources that joinder will occa-

---

[3] The defendant also raised a prosecutorial misconduct issue on appeal, claiming that the prosecutor's argument to the jury on the felon in possession charge misstated the law and impermissibly referred to evidence presented during the first part of the bifurcated trial. We conclude that this claim is without merit; the prosecutor made a rational legal argument based upon the facts in evidence.

[4] Joshua made his motion pursuant to Rule 14 of the Federal Rules of Criminal Procedure which provides in pertinent part as follows:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

sion. Striking the appropriate balance is within the sound discretion of the district courts. Accordingly, we review such decisions for an abuse of that discretion. United States v. Sandini, 888 F.2d 300, 305 (3d Cir. 1989), cert. denied, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 959 (1990).

Joshua maintains that the district court's procedure prejudiced him because the same jury that heard the evidence in the first part of the trial was then asked to decide Count Four—raising the possibility of improper spill-over of evidence. Moreover, he claims that severance was mandated by our opinion in United States v. Busic, 587 F.2d 577 (3d Cir. 1978), rev'd on other grounds, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

In Busic, we dealt with a similar factual situation. The defendant was charged with various drug offenses and with being a felon in possession of a firearm. Claiming prejudice if the jury were aware of his prior convictions, the defendant moved to sever the weapons possession charge. The district court denied the defendant's motion and he appealed. This court upheld the district court's decision on the grounds that the evidence was independently admissible on the other counts of the indictment and additionally that any error was harmless beyond a reasonable doubt. However, we went on to advise the district courts that:

> [W]e think that in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts—that were these counts to be tried alone the jury would not hear this evidence—then severance should be granted.

Id. at 585 (footnote omitted).[5] We recognized that the district courts may have difficulty making these determinations in a pre-trial setting; however, "if the government chooses to join such counts, it

---

[5] This so-called "per se rule" of Busic has been widely criticized by other courts of appeals and no other court has adopted the procedure spelled out there. See, e.g., United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir.1986); United States v. Daniels, 770 F.2d 1111, 1117 (D.C.Cir.1985); United States v. Silva, 745 F.2d 840, 843 (4th Cir.1984), cert. denied, 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); United States v. Valentine, 706 F.2d 282, 290 (10th Cir.1983); United States v. Aleman, 609 F.2d 298 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

must be prepared to justify the joinder to the trial judge by showing that the prior convictions would be admissible even absent joinder." Id. at 585 n. 9.

The parties disagree on whether the procedure followed in this case was condoned or forbidden by Busic. Although in Busic we noted that bifurcation was a "novel approach" to the problem, id at 585 (citing United States v. Franke, 331 F.Supp. 136 (D.Minn.1971)), we have not yet squarely addressed the issue of its propriety. Moreover, the district courts in this circuit have reached contrary conclusions on that issue. In United States v. Vastola, 670 F.Supp. 1244, 1263 (D.N.J.1987), the court interpreted our reference to bifurcation as a "novel approach" to mean that we approved of this procedure. However, in United States v. Edwards, 700 F.Supp. 837, 838 (W.D.Pa. 1988), the court refused to read Busic "so loosely" and held that the bifurcated trial procedure replaced one kind of prejudice to the defendant with another:

> Rather than determining the guilt or non-guilt of the defendant as to Counts One and Two with knowledge of a prior felony conviction, the jury would determine the guilt or non-guilt of the defendant as to Count Three after hearing testimony relating to, and possibly convicting the defendant of Counts One and Two.

Id.

We conclude that the procedure adopted by the district court here strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy. Our concern in Busic was that the necessity of introducing evidence of the defendant's criminal record in order to prove the weapons possession charge would prejudice the defendant during the jury's deliberations on other counts. The bifurcated trial procedure adopted here addresses that concern. The defendant's criminal past is not made known to the jury until after they have reached a verdict with respect to the other charges. At the same time, this procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date.

The potential for the type of prejudice that concerned the court in Edwards and of which Joshua complains is the same potential for prejudice that every criminal defendant faces when multiple

counts are tried together. Here, for example, the potential for prejudice to Joshua from the jury having the evidence regarding armed bank robbery available to it in the first part of the trial when it decided Count Three (receipt of a firearm with an obliterated serial number) is precisely the same potential for prejudice that arose when the jury had that same evidence available to it while deciding the unlawful possession of a firearm charge in the second phase. Thus, the logical extension of Joshua's argument is that a defendant is entitled to separate trials on all charges against her because she will suffer prejudice if the jury hears evidence regarding more than one charge in a given trial. This is clearly an untenable position that we decline to endorse.

All of the charges contained in Joshua's indictment arose out of the same, uninterrupted series of transactions, making it highly efficient to try all of them together. This is the kind of situation in which all charges are normally joined for trial in the absence of a showing of substantial potential for prejudice. See F.R.Cr.P. 8(a) &14. There was no such showing here. United States v. Thomas, 610 F.2d 1166, 1171 (3d Cir.1979) (Although in moving to sever, defendant correctly identified danger inherent when related charges are tried together, "absent special justification, juries are relied on to recall and sort through a broad range of evidence to which they are exposed.") Accordingly, we conclude that the bifurcation procedure employed in this case was well within the discretion of the district court.

### Ili.

We now turn to the sentencing guidelines and their application in this particular case. Joshua argues that the district court erred in its application of the guidelines and that we should remand for resentencing.

### A.

In order to understand the arguments in this case, it is necessary to retrace the path through the briar patch of guidelines and commentary trod by the probation officer and the district court in arriving at Joshua's sentence. We start with U.S.S.G. § 4B1.4, the Armed Career Criminal Guideline, which provides in part:

(a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.

(b) The offense level for an armed career criminal is the greatest of:

(1) the offense level applicable from Chapters Two and Three; or

(2) the offense level from § 4B1.1 (Career Offender) if applicable; or

(3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

(B) 33, otherwise.*

It is undisputed that Joshua is subject to the sentence enhancement provisions of 18 U.S.C. § 924(e) and is therefore an armed career criminal. Accordingly, we first apply Chapters Two and Three of the guidelines pursuant to § 4B1.4(b)(1). Those provisions yield an adjusted offense level of 27.[6] This offense level did not figure into Joshua's sentence because the other provisions of § 4B1.4 produce greater offense levels.

---

*If § 3E1.1 (Acceptance of Responsibility) applies, reduce by 2 levels.

[6] This number is derived first by grouping Count One and Count Four under § 3D1.2(c). This guideline provides that closely-related counts should be grouped when one count embodies conduct that is treated as a specific offense characteristic of the other. Because use or possession of a weapon is a specific offense characteristic under the robbery guideline, § 2B3.1, these two counts are grouped. (In fact, this exact scenario is given as an example in Application Note 5 of § 3D1.2: "use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection.") Then, we determine the offense level applicable to the group under § 3D1.3. In this case, because the bank robbery offense yields the higher offense level of the counts in the group, it is used. The base offense level is 20, § 2B3.1(a). The specific offense characteristics increase the base offense level as follows: 2-level increase because the offense involved the property of a financial institution, § 2B3.1(b)(1); 3-level increase because a weapon was brandished, § 2B3.1(b)(2) (today, this would be 5-level increase due to an amendment to the guideline effective November 1, 1991); 1-level increase because a firearm was taken from the security guard, § 2B3.1(b)(5); 1-level increase because the loss was between $10,000 and $50,000, § 2B3.1(b)(6)(B). To the specific offense characteristic numbers, a 2-point adjustment for reckless endangerment under § 3C1.2 is added and a 2-point adjustment for acceptance of responsibility is deducted, § 3E1.1. This calculation yields an adjusted offense level of 27.

We next turn to the Career Offender Guideline, § 4B1.1[7] and make that calculation. This provision provides for enhanced penalties for a defendant who stands convicted of a "crime of violence" or a "controlled substance offense" if that defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense and is at least 18 years of age. These enhanced penalties are based upon the statutory maximum term of imprisonment associated with the particular crime of violence or controlled substance offense that is the offense of conviction.

The presentence report established an offense level under this section by considering both the weapons possession charge and the bank robbery charge as "crimes of violence." An application note under this section directs that "[i]f more than one count of conviction is a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that authorizes the greatest maximum term of imprisonment." U.S.S.G. § 4B1.1, comment. (n. 2). The statutory maximum term of imprisonment for the robbery count is 25 years. See supra note 1. Because 18 U.S.C. §§ 922(g) & 924(e)[8] carry a mandatory minimum sentence of

---

[7] U.S.S.G. 4B1.1 provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 | 32 |

* * *

* If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by 2 levels.

[8] 18 U.S.C. 924(e) provides in part:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than 15 years, and, notwithstanding any other provi-

"not less than 15 years," and include no express statement of the maximum sentence, the report concluded that the offense statutory maximum of the unlawful possession charge was life imprisonment. Accordingly, the presentence report recommended that Joshua receive an offense level of 37. This level was decreased by two under § 3E1.1 for acceptance of responsibility. The district court accepted the analysis of the presentence report in sentencing Joshua.

Because the offense level of 35 derived from the Career Offender provision was greater than those otherwise applicable under the other provisions of the Armed Career Criminal guideline, the district court sentenced Joshua on that basis. Offense level 35 with a criminal history category of VI yields a sentencing range of 292–365 months. The district court sentenced Joshua within this range, imposing a sentence of 365 months for the unlawful weapons possession charge and 300 months for the armed bank robbery charge.

## B.

Joshua makes two arguments regarding the application of the career offender guideline. First, he argues that the statutory maximum penalty under 18 U.S.C. § 924(e) is not life imprisonment but some term of years in excess of 15 years. The language of the section provides only a mandatory minimum sentence of fifteen years and supplies no maximum. However, as the government points out, every court of appeals that has considered the question, including this one, has concluded that the maximum sentence authorized under § 924(e) is life imprisonment. United States v. Williams, 892 F.2d 296, 304 (3d Cir.1989) ("When Congress provided for 'imprisonment of not less than fifteen years [in § 924(e)(1)],' it meant a maximum of life."), cert. denied, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); see also United States v. Fields, 923 F.2d 358, 362 (5th Cir.), cert. denied, — U.S. —, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); United States v. Alvarez, 914 F.2d 915, 919 (7th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); United States v. Carey, 898 F.2d 642, 646 (8th

sion of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

Cir.1990); United States v. Blannon, 836 F.2d 843, 845 (4th Cir.), cert. denied 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). Therefore, if the court's conclusion is correct that the weapons possession charge is properly considered a crime of violence under the guidelines, then the offense level of 37 prior to any acceptance of responsibility adjustment is also correct.

## C.

This brings us to Joshua's second argument, that possession of a firearm by a convicted felon is not a crime of violence, and therefore should not have been considered when calculating the defendant's offense level under § 4B1.1. The term "crime of violence" is defined in § 4B1.2:

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>> (i) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Application note 2 of § 4B1.2 as it existed at the time of Joshua's sentencing read as follows:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved the use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

Between the time of Joshua's sentence and his appeal, the Sentencing Commission promulgated a "clarifying" amendment to this commentary.[9] As the actual text of guideline was not changed, the

---

[9] Application Note 2 now provides:
"Crime of violence" includes murder, manslaughter, kidnapping, aggravated

Commission did not present this amendment to Congress in accordance with the amendment procedures contained in 28 U.S.C. § 994(p).[10] See 56 Fed.Reg. 22,762 (1991). The amendment, however, now makes explicit that the Sentencing Commission does not intend unlawful possession of a firearm by a felon to be considered a crime of violence. Moreover, the amendment also demonstrates the Commission's intent that sentencing courts make the determination whether a crime "otherwise involves conduct that presents a serious potential risk of physical injury" by looking only at the indictment charging the defendant. The commentary accompanying the amendment states that, "[t]his amendment clarifies that the application of § 4B1.2 is determined by the offense of conviction (i.e., the conduct charged in the count of which the defendant was convicted); [and] clarifies that the offense of unlawful possession of

> assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved the use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of the inquiry.
>
> The term "crime of violence" does not include the offense of unlawful possession of a firearm by a felon. Where the instant offense is the unlawful possession of a firearm by a felon, the specific offense characteristics of § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) provide an increase in offense level if the defendant has one or more prior felony convictions for a crime of violence or controlled substance offense; and, if the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), 4B1.4 (Armed Career Criminal) will apply.
>
> See Appendix C, Guidelines Manual, 253–54.

[10] 28 U.S.C. § 944(p) provides:

> The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines. . . . Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress.

a weapon is not a crime of violence for the purposes of this section . . ." Appendix C, Guidelines Manual at 254 (1991). Joshua argues that because, in the Sentencing Commission's own words, this amendment is not a substantive change to the guideline and merely a clarification of the Commission's intent, that it should apply to him despite the fact that the effective date of the amendment is after the date of his sentence. See United States v. Ofchinick, 877 F.2d 251, 257 n. 9 (3d Cir.1989) ("Inasmuch as the amendment to the guideline [which is not yet in effect] is intended to clarify the meaning of the existing guideline, we may give it substantial weight in determining the meaning of the existing guideline.")

Unfortunately, this amendment to the commentary urges us to interpret the guideline in a manner inconsistent with two recent decisions of this court upon which the government relies. In United States v. John, 936 F.2d 764 (3d Cir.1991), we held that, because of the facts proved at trial, the defendant's prior Virgin Islands grand larceny conviction was appropriately considered a crime of violence.[11] This holding was based upon the following reasoning:

> We think it plain . . . that the Sentencing Commission essentially envisioned three independent ways by which a prior conviction will be considered a "crime of violence": (1) the prior conviction is for a crime that is among those specifically enumerated (murder, manslaughter, kidnapping, etc.); (2) the prior conviction is for a crime that, although not specifically enumerated, has as an element of the offense the use, attempted use, or threatened use of physical force; or (3) the prior conviction is for a crime that, although neither specifically enumerated nor involving physical force as an element of the offense, involves conduct posing a serious potential risk of physical injury to another.

---

[11] The court in John was faced with an analogous, but somewhat different situation from the one facing us. The defendant in John challenged the characterization of a prior offense as a crime of violence for the purposes of determining whether the Career Offender provision applied to him in the first place. The definition of the term "crime of violence" in § 4B1.2, however, is the same regardless of whether the court is concerned with the instant offense or with a prior felony conviction. But see United States v. Walker, 930 F.2d 789, 794(10th Cir.1991) (When determining whether prior offenses is a crime of violence, court may only look to elements of crime as charged in indictment, but when categorizing instant offense, court may examine actual conduct.)

Id. at 767. Under this interpretation, the court went on to hold that whether the offense fits within this third category is determined by looking beyond the facts charged in the indictment and through to the defendant's underlying conduct. Id. at 768 (citing United States v. Williams, 892 F.2d 296, 304 (3d Cir.1989)). Therefore, all relevant conduct under § 1B1.3 should be considered. Because the defendant's grand larceny conviction in John involved threatening the victims with guns, the court concluded that it should be considered a crime of violence under the third prong.[12]

The recent amendment to the commentary clearly indicates the Sentencing Commission's intent that in determining whether a particular offense "otherwise involves conduct that presents a serious potential risk of physical injury to another," the sentencing court will look only to that conduct expressly charged in the indictment, see supra note 9, a view of the guideline we explicitly rejected in John. We stated there:

> [I]t is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct under the first two prongs. All that the court needs to know can be gleaned from the fact of conviction and the charging paper. However, in our view, the third prong quite clearly permits the court to examine the defendant's actual conduct to ascertain whether that conduct posed a sufficient potential risk of physical injury to another to elevate the crime to a "crime of violence."

John, 936 F.2d at 767–68 (citation omitted).

The second of our cases that is in tension with the amended commentary is United States v. Williams, 892 F.2d 296 (3d Cir. 1989),

---

[12] In its short life, John has been criticized by other courts of appeals as ignoring the clear intent of Sentencing Commission. These courts read § 4B1.1 and the attendant commentary to prohibit the sentencing court from looking to all the relevant conduct when deciding whether a particular offense is a crime of violence. These courts hold that this decision is made by 1) comparing the offense charged with the list of enumerated crimes of violence, 2) determining whether an element of the offense involves physical force, or 3) looking to the conduct actually charged in the indictment for evidence of violence. See United States v. Johnson, 953 F.2d 110, 112-114 (4th Cir.1991) ("In assessing a particular offense to determine if it is a crime of violence under the 'catchall' provision of U.S.S.G. § 4B1.2, a sentencing court must confine its factual inquiry to those facts charged in the indictment."); United States v. Fitzhugh, 954 F.2d 253, 255 (5th Cir.1992) (same).

cert. denied, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). There, we held that possession of a firearm by a felon may or may not be a crime of violence depending upon the circumstances. Relying on the application notes relevant at that time, the court held that "possessing a gun while firing it [at a person] is a crime of violence; possession without firing the weapon is not." Every other court of appeals that addressed the question before the amendment to the commentary in question had reached a similar conclusion: at least in some circumstances, a felon in possession charge could be considered a crime of violence. See United States v. O'Neal, 937 F.2d 1369, 1372 (9th Cir.1991) (possession of a firearm by a felon is per se a crime of violence); United States v. Stinson, 943 F.2d 1268 (11th Cir.1991) (same); United States v. Walker, 930 F.2d 789 (10th Cir.1991) (Court should look to the facts of the case to determine whether possession of a firearm by a felon is a crime of violence); United States v. Alvarez, 914 F.2d 915 (7th Cir.1990) (same), cert. denied, — U.S. — , 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); United States v. Goodman, 914 F.2d 696 (5th Cir.1990) (same). However, the amended commentary establishes a bright-line rule with respect to the crime of felon in possession of a firearm. According to the commentary, under no circumstances is this crime to be considered a crime of violence for purposes of the Career Offender Guideline.

 The guidelines themselves provide that a court is generally required to apply the guidelines and commentary in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)–(5). In addition, sentencing courts may look to subsequent amendments to the guidelines and commentary, even those that have not become effective at the time of sentencing, as strong indications of the Sentencing Commission's intent in promulgating a relevant guideline. United States v. Ofchinick, 877 F.2d 251, 257 n. 9 (3d Cir.1989); Early v. United States, — U.S. —, 112 S.Ct. 330, 116 L.Ed.2d 270, 271 (1991) (White, J., dissenting from denial of certiorari) (collecting cases).[13] At the same time, this panel and the district courts in this circuit are duty bound to adhere to the prior decisions of this court. See Inter-

---

[13] It is important to note that we are not here concerned with an amendment that imposes a harsher penalty than the guidelines and commentary in effect at the time of the crime. The issue here is whether the defendant gets the benefit of an amendment that would authorize a lesser penalty. Thus the ex post facto clause is not implicated. Miller v. Florida, 482 U.S.423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); United States v. Kopp, 951 F.2d 521, 526 n. 8 (3d Cir. 1991).

nal Operating Procedure 9.1 (1990). Because John and Williams cannot be reconciled with the Sentencing Commission's most recent announcement regarding the meaning of § 4B1.1, the issue to be decided here is whether we, as a panel, are free to consider the Commission's new commentary and, based thereon, to reach a decision contrary to the holdings of John and Williams.

The courts of appeals that have considered analogous issues have reached differing conclusions. In United States v. Saucedo, 950 F.2d 1508 (10th Cir.1991), the court addressed the Commission's amendment to the commentary to § 3B1.1, giving that guideline a construction that conflicted with existing Tenth Circuit precedent. The court concluded that:

> Circuit courts are empowered to determine whether sentences are imposed in accordance with the law and whether the guidelines have been properly applied. 18 U.S.C. § 3742(f). Our jurisdictional grant of authority necessarily implies that our interpretation of a guideline has the force of law until such time as the Sentencing Commission or Congress changes the actual text of the guideline. The Sentencing Commission's post hoc clarification of its intent does not invalidate our pre-amendment interpretation of the guideline.

Id. at 1515.

The Court of Appeals for the Eleventh Circuit took precisely the same view in a case factually on all fours with ours. United States v. Stinson, 957 F.2d 813, 815 (11th Cir.1992) ("If there is no change to a particular guideline, but the Commission alters that section's commentary, there is no evidence that Congress reviews it or is even notified of the alteration. . . . We decline to be bound by the change in section 4B1.2's commentary until Congress [or the Sentencing Commission with congressional approval] amends section 4B1.2's language to exclude specifically the possession of a firearm by a felon as a 'crime of violence.'") (footnote omitted).

On the other side of the issue are the Courts of Appeals for the Fifth and District of Columbia Circuits. In United States v. Fitzhugh, 954 F.2d 253 (5th Cir. 1992), the court decided the fate of one of its prior decisions, United States v. Goodman, 914 F.2d 696 (5th Cir.1990) (sentencing court is permitted to look beyond the face of the indictment at the underlying conduct to determine whether an offense is a crime of violence), in the face of the subsequent amendment to the commentary. With little discussion, the

193

court concluded that the amendment took precedence and that "Goodman is no longer controlling." Fitzhugh, 954 F.2d at 255. The D.C. Circuit, also with limited discussion, reached a similar conclusion in United States v. Caballero, 936 F.2d 1292, 1299 (D.C.Cir.1991) (reasoning in earlier precedent was "nullified by the clarifying amendment"), rev'g United States v. Williams, 891 F.2d 921 (D.C.Cir.1989).

In pondering which side to take in this disagreement among the courts of appeals, we have been significantly influenced by what we understand to be the Commission's role in the statutory scheme. In addition to promulgating the guidelines, the Commission has a continuing obligation to "review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). In light of this obligation and the Commission's authority to determine the retroactive effect of an amendment to the guidelines that reduces a term of imprisonment, see 28 U.S.C. § 994(u); U.S.S.G. § 1B1.10, the Supreme Court refused to resolve a split of authority among the courts of appeals over the meaning of U.S.S.G. § 1B1.2 because the Commission had already requested public comment on an amendment to resolve the conflict. Braxton v. United States, — U.S. —, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). The Court concluded that, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever ·clarifying revisions to the Guidelines conflicting judicial decisions might suggest." Id. — U.S. at —, 111 S.Ct. at 1858. Clearly, the Commission has a part to play when courts, interpreting the same language, reach contrary conclusions.

■■ Given the statutory scheme and the Commission's role in it, we think it important to distinguish two situations both of which are illustrated by this case. Where the Commission adopts an interpretive commentary amendment that the text of the guideline cannot reasonably support, the Commission circumvents the process Congress has established for amending the guidelines. When this happens, we should decline to follow its lead. Here, for example, § 4B1.2 clearly calls for different approaches when applying subparagraph (i) and subparagraph (ii). Subparagraph (i) calls upon the sentencing court to focus on the elements of the offense of conviction to determine whether they include the use, attempted use

194

or threatened use of physical force. Subsection (ii), however, directs the sentencing court to look to the "conduct" involved in the offense and to determine whether that "conduct" presents a serious potential risk of physical injury. Because possession of a weapon by a felon does not have an element of physical force, the courts, under subsection (ii), have looked either to the conduct alleged in the indictment or the conduct evidenced by the record to determine whether the defendant committed a crime of violence. As we have previously noted, no court prior to the commentary amendment had interpreted the guideline to mean that possession of a firearm by a felon is *never* a crime of violence. Therefore, to the extent the amendment in question purports to make possession of a firearm by a felon never a crime of violence, we conclude that the text of the guideline will not support this interpretation. Thus, we decline to give it any effect. Quite another issue is presented, however, where a guideline is ambiguous and the Commission adopts a commentary that resolves or "clarifies" the ambiguity. Here, for example, § 4B1.2(1)(ii) is reasonably susceptible to two interpretations: 1) that the sentencing court should look only to the conduct alleged in the relevant count of the indictment, or 2) that the court should look to all conduct revealed by the available evidence. This court, when confronted with the ambiguity, interpreted it to mean the latter. It is now apparent, however, that the Commission thinks the proper construction is the former.

We believe the 10th and 11th Circuits misstate the issue when they ask, in effect, whether the Commission has the authority to overturn their prior precedents. Obviously, the Commission is not so authorized. On the other hand, the Commission is authorized to interpret the guidelines by issuing commentary without going through the amendment process. See United States Sentencing Commission Annual Report 1991 at 5 (Fifteen amendments that clarify commentary, including amendment at issue, "did not require submission to Congress."); 28 U.S.C. § 994(p) (requiring that the Commission submit to Congress only amendments to the guidelines themselves.) The issue for resolution is whether a court may properly *consider* such amended commentary in the course of determining what a guideline means and whether it may reach a result with the benefit of that amended commentary contrary to

that which a prior panel reached without such assistance. We believe this issue should be resolved in the affirmative.[14]

It seems to us that the situation is no different than the one a court confronts when an administrative agency authorized to administer and enforce a statute, takes a position on the correct interpretation of an ambiguous provision of the statute. Normally, courts give deference to such an interpretation. Just as with the proposed guideline commentary in Ofchinick, this court would normally consider and, indeed defer to, a new agency interpretation of an ambiguous governing statutory provision if it represents a reasonable reading of that provision.

Where a prior panel of this court has interpreted an ambiguous statute in one way, and the responsible administrative agency later resolves the ambiguity another way, this court is not bound to close its eyes to the new source of enlightenment. In addition to securing the expertise of the agency, this approach tends to promote uniformity in the application of the statute. Both of these benefits would result from our treating a commentary in the same manner as a statutory interpretation of an agency having the responsibility of administering the statute. If anything, the case for taking note of new commentary is more compelling here because of the Commission's role as the entity that initiates sentencing guidelines.

■■ We join the Courts of Appeals for the Fifth and District of Columbia Circuits in holding that we may consider a new commentary regarding an ambiguous guideline in determining how that guideline should be applied. We further hold that a panel may consider new commentary text where another panel of this court has already resolved the ambiguity and that a second panel is entitled to defer to the new commentary even when it mandates a result different from that of the prior panel.

---

[14] A related question, which we need not resolve, is whether commentary amendments that are submitted to Congress in accordance with the guideline amendment procedure should be treated differently than amendments such as the one in question. We note that despite promulgating the amendment sub judice in 1991 and indicating that it would take effect November 1 of that year, the Commission recently submitted the same amendment to Congress. See 57 Fed. Reg. 20148, 20157 (1992) (Amendment 25). According to the Commission, this "new" amendment "ratifies a previous amendment to the commentary." In the absence of congressional action, the effective date of this amendment is November 1, 1992.

■■ We conclude that the reading of § 4B1.2 reflected in the new commentary is a permissible reading of that guideline and, based on Ofchinick, that this court in Williams and John would have so interpreted § 4B1.2 if it had had the benefit of the new commentary. Accordingly, we further hold that a sentencing court should look solely to the conduct alleged in the count of the indictment charging the offense of conviction in order to determine whether that offense is a crime of violence under subsection (ii) of the guideline.

## D.

■ We now turn to the effect on Joshua's sentence of the above discussion. Count Four of the indictment in this case simply lists Joshua's prior felony offenses and charges him with possession of a firearm and ammunition. There is no conduct alleged that posed "a serious potential risk of physical injury to another." Accordingly, Joshua's sentence under the career offender guideline cannot stand. We recognize that the district court correctly sentenced Joshua according to the guidelines and our interpretation of the guidelines in effect at the time of sentencing; nevertheless, we will remand to give the district court an opportunity to resentence in a manner consistent with this opinion.

## IV.

■ Joshua's final claim on appeal is that the district court erred in imposing a $3,000 fine. This argument is without merit.

The initial presentence report prepared after the trial but before the plea agreement indicated that Joshua had no assets and was therefore unable to pay a fine. The government objected to this aspect of the report. Joshua was a judgment creditor of the Virgin Islands as the result of the settlement of a lawsuit. He was owed $3,000.

Under the guidelines, the court must "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." § 5E1.2. In United States v. Demes, 941 F.2d 220, 223 (3d Cir.), cert. denied, — U.S. —, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991), we reversed the imposition of a fine where the court "made no finding as to Demes' ability to pay the fine." The defendant argues that the same error occurred here.

This argument mischaracterizes the record. During the sentencing hearing, the court stated, "[a] fine of $3,000 is imposed as the

defendant will be in receipt of such funds by virtue of a judgment heretofore entered in his favor and against the Virgin Islands on December 28, 1990, the same to be paid when the funds become available." App. at 593. It is clear from this statement that the court considered the defendant's ability to pay. The imposition of the fine will therefore be affirmed.[15]

## V.

In accordance with the above discussion, we will affirm Joshua's conviction, vacate the district court's judgment of sentence, and remand for resentencing consistent with this opinion.

---

[15] The government notes in its brief and appendix that the fine has already been paid. The government attached the judgment and was paid directly by the government of the Virgin Islands. A small amount remained in excess of the amount of the fine which has been returned to Mr. Joshua.