**UNITED STATES of America**

v.

**Daniel BIFIELD, Beverly Davis, William McDermott, Stephen Montgomery, Defendants**

No. 4:CR–97–0195.

United States District Court, M.D. Pennsylvania.

Dec. 13, 2000.

---

George J. Rocktashel, Assistant U.S. Attorney, U.S. Attorney's Office, Williamsport, PA, for U.S.

Merrill Rubin, New York City, Stephen F. Becker, Lewisburg, PA, Thomas A. Walrath, Wellsboro, PA, Eric R. Lindhardt, Williamsport, PA, for defendants.

## MEMORANDUM

MCCLURE, District Judge.

### I. Procedural History

On August 27, 1997, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendants Janet Bifield, Daniel Bifield, Beverly Davis, William McDermott, Thomas Harrison, Robert L. Sizemore, and Barry Spell with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The case against Spell was transferred to the United States District Court for the District of Nevada pursuant to Fed. R.Crim.P. 20. Spell entered a plea of guilty to the conspiracy charge and was sentenced to a period of incarceration of 63 months, to be followed by a 3–year term of supervised release. Sizemore entered a plea of guilty to Count One of the indictment on December 4, 1997. Janet Bifield entered a plea of guilty to Count One on January 26, 1998.

On June 24, 1998, a grand jury sitting in the Middle District of Pennsylvania returned a superseding indictment charging the same offense against defendants Daniel Bifield, Davis, McDermott, Harrison, and Stephen Montgomery. Harrison entered a plea of guilty to Count One on September 30, 1998. Montgomery entered a plea of guilty to Count One on October 1, 1998. Only Daniel Bifield, Davis, and McDermott proceeded to trial, and all three were found guilty by a jury on November 9, 1998.

Defendant Diane Oberley was charged separately under § 1956(h) by information filed December 12, 1996, and she entered a plea of guilty on January 13, 1997. Defendant Erica Rowlands was charged under § 1956(h) by information filed January 14, 1997, and she entered a plea of guilty on February 11, 1997.

Pre-sentence reports were ordered and obtained for each defendant.

Between January 29 and March 19, 1999, the court heard evidence and argument related to the objections to the PSR's, and any motions for upward or downward departures from the imprisonment range as determined under the Sentencing Guidelines. Sentencing was deferred pending hearing all of this evidence and argument, so that the court would have complete information available and so that the sentences imposed would be consistent among the co-defendants/co-conspirators.

The court then issued a comprehensive memorandum on March 25, 1999 as to nine defendants charged with, among other things, conspiracy to commit money laundering of the proceeds received from the state income tax fraud instigated primarily by federal inmates Rodney Archambeault and Anthony Pfeffer. *United States v. Bifield,* 42 F.Supp.2d 477 (M.D.Pa.1999). The defendants were then sentenced within the ranges reflected in Table 1 attached to the order which accompanied that memorandum. Of the four defendants now before the court, Daniel Bifield, William McDermott and Beverly Davis were sentenced on April 1, 1999 and Stephen Montgomery, on May 27, 1999. All four filed direct appeals and, on October 16, 2000 the United States Court of Appeals for the Third Circuit remanded the case to this court. The judgments of conviction entered April 21, 1999 and May 27, 1999, respectively, were vacated, and the matters remanded for consideration in accordance with the Third Circuit's decision in the case of *United States v. Bockius,* No.

99–1973, filed September 25, 2000, 228 F.3d 305 (3d Cir.2000).

On October 18, 2000 this court entered an order directing briefing on the matter. The court directed counsel to address the manner in which the Third Circuit opinion in *Bockius* should apply to the resentencing of each defendant. The court further asked counsel to suggest to the court how it should engage in the two-step inquiry outlined in *Bockius* and *United States v. Smith,* 186 F.3d 290 (3d Cir.1999) referenced in the *Bockius* opinion. We indicated particular interest in learning how the *Smith/Bockius* two-step inquiry differs from the analysis which this court undertook and recited in its memorandum of March 25, 1999, and why the result should be different from that reached by the court at that time.

The matter has now been fully briefed, and resentencing is scheduled for December 21, 2000.

## II. Application of Money Laundering Guideline

A problem common to all of the defendants was the base offense level for conspiracy to commit money laundering. For reasons set forth at length in our March 25, 1999 memorandum, we settled upon a base level of 20 rather than 23 under USSG § 2S1.1(a)(1). As Table 1 attached to that order clearly sets forth, a number of adjustments were made in each case. Most significantly, the court denied defendants' motions to depart downward from the Guidelines, rejecting their argument that the offenses committed by these defendants did not fall within the heartland of money laundering cases, but rather should be sentenced under the underlying tax fraud scheme that provided the source of the money to be laundered. The difference is significant. The base offense level for tax fraud under USSG § 2F1.1 is 6.

In *Bockius,* the district court had read the Third Circuit's opinion in *Smith* as limiting the heartland of USSG § 2S1.1 to "the money laundering activity connected with extensive drug trafficking and serious crime." 186 F.3d at 300. The Third Circuit in *Bockius,* however, made clear that this was a misinterpretation of *Smith,* and remanded the case to the district court with instructions to "engage in a heartland analysis before applying the money laundering guideline." 228 F.3d at 313. The court in *Bockius* further stated: "Where money laundering is not 'minimal or incidental,' and is 'separate from the underlying crime' and intended to 'make it appear that the funds were legitimate' or to funnel the money into further criminal activities § 2S1.1 is an applicable guideline." *Id.*

█ We believe that, as a result of the remand in this case, we are instructed to conduct a similar "heartland analysis" to determine whether we appropriately applied the money laundering guideline. We did apply the heartland analysis in determining that a downward departure from the money laundering guideline to the tax fraud guideline was not appropriate. The court in *Bockius* had this further comment on *Smith:*

> Smith held that under Appendix A to the Guidelines manual, a sentencing court must engage in a two-step inquiry before applying a particular guideline section.
>
> 1. Does the designated guideline apply or is the conduct 'atypical' in comparison to that usually punished by the same statute of conviction; and
>
> 2. If the conduct is 'atypical,' which guideline is more appropriate?
>
> Smith, 186 F.3d at 297 (citing United States v. Voss, 956 F.2d 1007, 1009 (10th Cir.1992), superseded in part on other grounds by amendment to U.S.S.G. § 2D1.1).
>
> Atypical money laundering conduct is conduct outside the heartland of § 2S1.1. See Smith, 186 F.3d at 297–98. When deciding whether to apply the guideline, a court must undertake a heartland analysis 'identical' to that employed when evaluating downward

departures under U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). Id. at 298. *Id.* at 311.

As we undertook a heartland analysis in our March 25, 1999 memorandum to evaluate the motions for downward departure and as that analysis is "identical" to that which must be used in determining whether to apply the guideline, then it would appear that we have already undertaken the analysis implicated by the remand directive, albeit for a different purpose. Therefore, for all of the reasons set forth in our memorandum of March 25, 1999, we now restate that we find the conduct of these four defendants to fall within the heartland of "ordinary money laundering" and not to be "atypical money laundering conduct."

### III. Clarifying Guideline Amendments

■ Another intriguing question now presents itself to the court as a result of the remand order vacating the original sentences. Resentencing is now scheduled for December 21, 2000. A new guidelines manual has just been issued by the United States Sentencing Commission which includes all amendments effective through November 1, 2000. According to the guidelines, "the court shall use the Guidelines Manual in effect on the date the defendant is sentenced." USSG § 1B1.11(a). Generally, the court is required to apply the guidelines and commentary in effect at the time of sentencing. *United States v. Joshua,* 976 F.2d 844, 853 (3d Cir.1992) (citing 18 U.S.C. § 3553(a)(4)-(5)). It could be quite reasonably argued that, as the previous sentences were vacated, the new Guidelines Manual is the one to be used for the sentencing to take place December 21, 2000.

In Amendment 591, made effective November 1, 2000, the Sentencing Commission amended USSG § 1B1.1. In explaining its reasons for the various amendments made under Amendment 591, the Commission included the following statement:

The amendment modifies §§ 1B1.1(a), 1B1.2(a), and the Statutory Index's introductory commentary to clarify the inter-relationship among these provisions. The clarification is intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within the limited 'stipulation' exception set forth in § 1B1.2(a). Therefore, in order for the enhanced penalties in § 2D1.2 to apply, the defendant must be convicted of an offense referenced to § 2D1.1, rather than simply have engaged in conduct described by that guideline. Furthermore, the amendment deletes Application Note 3 of § 1B1.2 (Applicable Guidelines), which provided that in many instances it would be appropriate for the court to consider the actual conduct of the offender, even if such conduct did not constitute an element of the offense. This application note describes a consideration that is more appropriate when applying § 1B1.3 (Relevant Conduct), and its current placement in § 1B1.2 apparently has caused confusion in applying that guideline's principles to determine the offense conduct guideline in Chapter Two most appropriate for the offense of conviction. In particular, the note has been used by some courts to permit a court to decline to use the offense guideline referenced in the Statutory Index in cases that were allegedly "atypical" or "outside the heartland." *See United States v. Smith, supra.*

Amendment 591, Supplement to Appendix C, November 1, 2000, pp. 31–32.

In USSG § 1B1.11(b)(2), the Commission states that "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." Here, the Commission has expressly stated that the amendments are done "to clarify the interrelationship among the various provisions." "The clari-

fication is intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction...." Thus, even if it were deemed more appropriate at resentencing to apply the Guidelines Manual used at the time of the initial sentencing, the court could and should properly consider the subsequent amendments which have been made to clarify existing provisions. *See United States v. Bass*, 54 F.3d 125 (3d Cir.1995); *Joshua*.

█] Therefore, if the court were to apply the clarifying amendments contained in Amendment 591, the basic premise for the decisions in *Smith* and *Bockius* has been removed: For the purpose of determining the applicable guideline, the court does not engage in a "heartland" analysis, but simply applies "the offense guideline referenced in the Statutory Index for the statute of conviction." Here, the limited "stipulation" exception set forth in § 1B1.2(a) is completely inapplicable.

This court has been directed to reconsider the matter in accordance with the Third Circuit's decision in *Bockius*, and we have done so. We find that our "heartland" analysis for purposes of considering requests for a downward departure is equally applicable to a determination of whether or not this should be considered a typical or atypical case for the purpose of determining the applicable offense guideline. Nevertheless, it would now appear that such an analysis is unnecessary and, indeed, inappropriate, given the clarifying amendments made to become effective November 1, 2000, removing the ambiguity which spawned the *Smith* and *Bockius* decisions.

\*  \*  \*  \*  \*  \*

For all of these reasons, the court will make no change from its order of March 25, 1999, and intends to resentence all four defendants to the identical sentences im-

posed initially on April 21, 1999 and May 25, 1999, respectively.