NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1448 & 11-1864
_____

UNITED STATES OF AMERICA

v.

LAMONT WILLIAMS,
a/k/a MICHAEL MANNING

Lamont Williams,
            Appellant at No. 11-1448

VAUGHN NICHOLS,
Also known as "B"

Vaughn Nichols,
            Appellant at No. 11-1864
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal Nos. 08-cr-00704-009 and 08-cr-00704-006
(Honorable Legrome D. Davis)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 13, 2012

Before:  SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: November 19, 2012)


_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

In this consolidated appeal following a jury trial, defendants challenge their convictions relating to a West Philadelphia drug trafficking operation. Vaughn Nichols was convicted of conspiracy to distribute five kilograms or more of cocaine (21 U.S.C. § 846) and possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1)). Nichols was sentenced to 240 months of imprisonment, ten years of supervised release, a $2,500 fine, and a $200 special assessment. Lamont Williams was convicted of conspiracy to distribute five kilograms or more of cocaine (21 U.S.C. § 846) and possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)). Williams was sentenced to 240 months of imprisonment, ten years of supervised release, a $2,000 fine, and a $200 special assessment.

Nichols and Williams challenge the sufficiency of the evidence underlying the jury's verdict that (1) they engaged in a conspiracy to distribute cocaine, and (2) the amount of cocaine they conspired to distribute equaled or exceeded five kilograms. Williams also challenges the denial of his motion to sever the charge of felon in possession of a firearm from the charge of conspiracy.

We will affirm.

## I

Maurice Hudson was the target of a large-scale drug trafficking investigation in West Philadelphia that began in 2006. Hudson ran his drug-distribution operation out of several properties he owned near Markoe and Ogden streets. During the investigation,

2

this area was under extensive surveillance by law enforcement. Officers installed pole cameras, wiretapped suspects' phones, and sent undercover agents to make controlled drug purchases. The investigation culminated on November 20, 2008, when law enforcement executed search warrants for thirty-four residences and vehicles. Williams' apartment was among those searched, and police recovered a handgun from the premises.

Ultimately, Hudson and several other suspected members of the operation, including Nichols and Williams, were charged under a Second Superseding Indictment with conspiracy to distribute five kilograms or more of cocaine (21 U.S.C. § 846). All defendants except Nichols and Williams entered guilty pleas.[1] Pursuant to plea agreements, Hudson and co-defendant Michael Greene testified as cooperating witnesses at the trial of Williams and Nichols.

Before trial, Williams made a motion to sever the felon-in-possession count and suppress evidence of the firearm from the conspiracy charge. The court denied Williams' motion but bifurcated the trial so that evidence of Williams' prior convictions was not introduced until after the jury considered the conspiracy charge.

The five-day trial began on October 25, 2010. At trial, Hudson testified at length about his drug distribution operation and his dealings with Williams and Nichols in 2007 and 2008. Greene, who was present for many of Hudson's transactions, also testified as to defendants' drug-related transactions with Hudson. The government presented telephone records, wiretap recordings, and testimony from surveilling officers. The jury

---

[1] Hudson pled guilty to conspiracy to distribute between fifteen and fifty kilograms of cocaine.

returned guilty verdicts on all counts.

II[2]

"To establish a conspiracy, the evidence must show that the alleged conspirators shared a unity of purpose, an intent to achieve a common goal, and had an agreement to work together to achieve that goal." *United States v. Robinson*, 167 F.3d 824, 829 (3d Cir. 1999). "The existence of a conspiracy may be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants in the criminal venture could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Barrow*, 363 F.2d 62, 64 (3d Cir. 1966). It is not necessary for the government to prove that each defendant knew all the other participants or details of the conspiracy. *United States v. Theodoropoulos*, 866 F.2d 587, 593 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 76 F.3d 526, 528 (3d Cir. 1996).

We may affirm a jury finding that separate drug sales constituted a single conspiracy if there is "sufficient evidence from which a jury could have concluded that each drug transaction was a step in achieving the conspiracy's common goal of

---

[2] We have jurisdiction under 28 U.S.C. § 1291. Our review of jury convictions on the basis of insufficiency of the evidence "places a very heavy burden on the appellant." *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995). We must affirm a conviction as long as "there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *Gov't of Virgin Islands v. Charles*, 72 F.3d 401, 410 (3d Cir. 1995). We may not "re-weigh the evidence presented at trial or reassess the credibility of the witnesses . . . ." *United States v. Al Hedaithy*, 392 F.3d 580, 605 (3d Cir. 2004). We have plenary review over whether counts were improperly joined. *United States v. Gorecki*, 813 F.2d 40, 41 (3d Cir. 1987). We review the denial of a motion for severance for abuse of discretion. *United States v. Adams*, 759 F.2d 1099, 1112 (3d Cir. 1985).

4

distributing cocaine for profit." *Theodoropoulos*, 866 F.2d at 593. But "a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

A

Both defendants contend the evidence was insufficient to sustain their conspiracy convictions. Nichols insists the government's evidence only proves that he and Hudson had a buyer-seller relationship. Williams similarly argues that he and Hudson merely performed a few isolated "favors" for one another with no further understanding or agreement. We conclude there was substantial evidence that both Williams and Nichols conspired with Hudson to help each other in their respective drug trafficking businesses, with the ultimate goal of distributing cocaine for profit.

To determine whether a defendant has joined a conspiracy,[3] we have looked to many factors, including "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." *Gibbs*, 190 F.3d at 199. The use of pseudonyms and coded language can point to a defendant's participation in a conspiracy. *See United States v. McGlory*, 968 F.2d 309, 323-25 (3d Cir. 1992).

The evidence demonstrated a clear pattern of mutual assistance and trust between

---

[3] Here, like in *Gibbs*, 190 F.3d at 195, there is ample evidence a narcotics conspiracy existed—the central inquiry is whether defendants joined it.

Hudson and defendants. For instance, Hudson testified that although he and his cousin Nichols maintained separate businesses, he helped Nichols on several occasions, meaning that "[i]f he called me and needed some help, I would sometimes give him money, or if he—if he wanted some drugs, I would give him drugs." Suppl. App. Appellee vol. 1, 128:1-3. And Nichols, in turn, helped Hudson by finding a supplier that sold Hudson a kilogram of cocaine.

Hudson testified he had a similar relationship with his old friend Lamont Williams, who sometimes did "favors" for him.[4] If Hudson's regular suppliers were unable to provide the amount of cocaine he needed, Hudson would ask Williams whether he had cocaine or knew some other source. Williams performed at least two "favors" for Hudson in 2007 and 2008, supplying him with a kilogram of cocaine on one occasion and two kilograms on another occasion. And Hudson helped Williams by selling nine ounces of cocaine to him when he needed it.

There was also evidence that Hudson and defendants kept in close contact, checked up on one another after leaving drug transactions, used nicknames, and spoke in code to avoid detection by police. This evidence undermines defendants' assertions that their relationships with Hudson consisted of a few discrete buyer-seller transactions or isolated favors. Instead, it suggests Hudson and defendants had a mutual, ongoing

---

[4] Hudson describes these transactions as "favors" because he and Williams would not make a profit from one another. But there is no requirement that a conspiracy prove profitable to its conspirators. Furthermore, even though Hudson and Williams did not make a profit in transactions with one another, the transactions were nonetheless mutually advantageous because they allowed Hudson and Williams to continue to distribute drugs to their customers when their regular suppliers could not meet their demands.

understanding they would help one another when needed.  Based on this evidence, a

rational jury could find the relationship between Hudson and defendants was, at bottom, a

"tacit agreement" to distribute cocaine for profit.[5]  *See United States v. Rawlins*, 606 F.3d

73, 80 (3d Cir. 2010) (noting conspiracies "are ordinarily formed by tacit agreement").

B

Nichols and Williams both contend the evidence does not support the jury's

findings they conspired to distribute five kilograms or more of cocaine.  Nichols

presumably bases this argument on Hudson's testimony that "between three and four

kilos" passed between him and Nichols during his drug-distribution operation.  App. vol.

1, 268:19; *but see id.* at 269:8 (calling this a "rough estimate").  Similarly, Williams

argues the government's evidence of "favors" between Hudson and Williams only totaled

three kilograms of cocaine.

Because Nichols and Williams were convicted of conspiracy—the agreement to

distribute cocaine—the jury was not bound to only consider the cocaine that actually

passed between defendants and Hudson.  *Cf. United States v. Jimenez Recio*, 537 U.S.

270, 274-75 (2003) (explaining that conspiracy is "'a distinct evil,' which 'may exist and

be punished whether or not the substantive crime ensues.'" (quoting *Salinas v. United

States*, 522 U.S. 52, 65 (1997))).  Furthermore, the twenty-year mandatory statutory

---

[5] Additionally, we have found "sufficient evidence of a conspiracy" where a witness testified the defendant gave him drugs on credit, with payment to be made after the drugs were sold.  *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008).  Hudson testified that he loaned money to Nichols to purchase drugs for both of them and that Williams gave cocaine to Hudson on credit, collecting payment after Hudson sold it. Under *Iglesias*, this testimony, standing alone, is sufficient to demonstrate defendants conspired with Hudson.

minimum[6] is triggered by the amount of cocaine distributed by the conspiracy as a whole and not the amount of cocaine attributable to defendants personally. *See United States v. Easter*, 553 F.3d 519, 523 (7th Cir. 2009) (explaining "when it comes to the statutory penalties, every coconspirator is liable for the . . . transactions that were reasonably foreseeable acts in furtherance of the entire conspiracy").

There was ample evidence to support the jury's findings that each defendant conspired with Hudson to distribute five kilograms or more of cocaine. Hudson testified at the height of his drug trafficking operation, he was distributing between two and three kilograms of cocaine per month. He pled guilty to distributing between fifteen and fifty kilograms of cocaine. Circumstantial evidence suggested Nichols and Williams were aware of the scope of Hudson's operation—Hudson kept in close touch with defendants, purchased distribution-size quantities of cocaine from defendants, and did so only when his regular suppliers fell through. Nichols also sought to borrow substantial sums of money from Hudson. Accordingly, the jury could have rationally concluded defendants agreed to distribute at least five kilograms of cocaine because they knew the scope of Hudson's operation and formed ongoing, open-ended agreements to help him.

Since the government's charges were supported by substantial evidence and a jury could have rationally concluded defendants conspired to distribute five kilograms or more of cocaine, the District Court properly imposed a mandatory twenty-year sentence

---

[6] Under 21 U.S.C. § 841(b)(1)(A), a defendant convicted of distribution or possession with intent to distribute five kilograms or more of cocaine shall be sentenced to a minimum of 10 years of imprisonment and a maximum of life imprisonment. This mandatory statutory minimum doubled to twenty years for both Nichols and Williams because of prior drug-related felony convictions. *See* 21 U.S.C. § 841(b)(1)(A).

8

for both defendants. *See* 21 U.S.C. § 841(b)(1)(A); *United States v. Reevey*, 631 F.3d 110, 113 (3d Cir. 2010) (describing the statutory minimum drug trafficking penalty as mandatory), *cert. denied*, 131 S. Ct. 2947 (2011).

III

Williams contends the District Court improperly joined the felon-in-possession count with the conspiracy count. Williams also asserts he was unfairly prejudiced by the failure to sever the two offenses.

Under Rule 8(a), offenses may be joined if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The counts here are "sufficiently connected temporally or logically" to meet the requirements of Rule 8(a). *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987). Like in *Gorecki*, "it is reasonable to assume that the firearm could have been used as a vital part of a plan to possess and distribute drugs, particularly since the firearm and the narcotics-related evidence were found on the same premises, at the same time, as a result of the same legal search."[7] *Id.*

Williams has also failed to show joinder created a substantial risk of prejudice. In *United States v. Joshua*, we approved the same bifurcated trial procedure followed here, explaining that it ensures a "defendant's criminal past is not made known to the jury until after they have reached a verdict with respect to the other charges. At the same time, this

---

[7] The firearm in Williams' apartment was discovered along with $7,620 in cash, five cell phones, and a driver's license under Williams' pseudonym.

9

procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date." 976 F.2d 844, 848 (3d Cir. 1992), *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36 (1993). We rejected defendant's contention that he was prejudiced by the procedure, finding "[t]he potential for the type of prejudice . . . of which Joshua complains is the same potential for prejudice that every criminal defendant faces when multiple counts are tried together." *Id.*

Like Joshua, Williams cannot show he was prejudiced by the joinder. Rather, as the District Court pointed out, evidence of the gun possession was relevant to the conspiracy charge, *see United States v. Picklesimer*, 585 F.2d 1199, 1204 (3d Cir. 1978) ("[W]e believe that where a defendant is charged with narcotics conspiracy, evidence that weapons were found in his possession may be relevant and admissible. . . . [A] weapon may be as much a tool of the crime as the van used to transport the narcotics."), and evidence of the conspiracy was relevant to the gun possession charge, *see Gorecki*, 813 F.2d at 42 (positing that a narcotics charge could be relevant as evidence of "motive, preparation, or plan" at a trial for a weapon charge). In particular, since Williams leased his apartment under a pseudonym, evidence of the conspiracy was necessary to link Williams to the apartment in which the gun was found. Evidence of both offenses would have been admissible at separate trials. Williams was not substantially prejudiced by having the two counts tried together. Accordingly, the District Court did not abuse its discretion by denying Williams' motion to sever the charge of felon in possession of a firearm from the charge of conspiracy.

## IV

For the foregoing reasons, we will affirm the judgments of conviction and sentence of Vaughn Nichols and Lamont Williams.