# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-2433, 07-2435, 07-3118, 07-3203, 07-3540 & 07-3628

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN P. EASTER, JAMAUL R. MCKAY, ANTHONY K. GLOVER, DARRELL D. DAVIS, BRADFORD V. DODSON, AND MONTRELL MCSWAIN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
Nos. 05 CR 50082-2, 05 CR 50082-9, 05 CR 50082-4, 05 CR 50082-1,
05 CR 50082-8 & 05 CR 50082-5—**Philip G. Reinhard**, *Judge.*

ARGUED NOVEMBER 19, 2008—DECIDED JANUARY 16, 2009

Before MANION, KANNE, and EVANS, *Circuit Judges.*

PER CURIAM. In a bit of police work worthy of a TV show, federal and local law enforcement officers installed audio and video recording devices in a house in Rockford,

Illinois, that the Titanic Stones gang then used to deal drugs. The police were given this rare opportunity when the gang's leader asked a girlfriend to rent a house for him and she went to the police. Officers monitored and recorded the dealing in the house for about a month in 2005 before the dealers discovered the recording devices. Then the authorities swooped in and arrested the dealers. The government indicted 14 defendants on 32 counts of drug and gun crimes. Three went to trial and were found guilty. Of those, two appeal. The other eleven pleaded guilty, and four of them appeal. Of the six appellants, only two, Jamaul McKay and Darrell Davis, present arguments on the merits. Both pleaded guilty and challenge only their sentences, but neither presents a meritorious argument, so we affirm in both cases. In each of the four other appeals, counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We grant those motions and dismiss the four appeals because all of the potential issues identified by counsel and the appellants would be frivolous.

## I.  HISTORY

McKay and Davis both pleaded guilty to conspiring to possess with intent to distribute heroin and crack, 21 U.S.C. §§ 846, 841(a)(1), and to possessing a gun in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). At sentencing, McKay did not dispute that the conspiracy itself involved at least 1 kilogram of heroin and at least 50 grams of crack. Instead, he argued that the portion of the overall amount attributed to his jointly undertaken crimi-

nal activity, *see* U.S.S.G. § 1B1.3(a)(1)(B), was overstated. McKay conceded that he should be sentenced on the basis of 960 grams of heroin, but he argued that he should not be responsible for any crack because he sold only heroin and could not have foreseen the crack sales by his coconspirators. The district court disagreed and found that McKay was responsible for some of the crack sold by other members of the conspiracy. The court estimated the amount of crack attributable to McKay at between 45 and 75 grams. The court then used the drug equivalency tables, U.S.S.G. § 2D1.1, cmt. 10, and converted 960 grams of heroin to 960 kilograms of marijuana and 45 to 75 grams of crack to between 900 and 1500 kilograms of marijuana. A range of 1860 to 2460 kilograms of marijuana yielded a base offense level of 32, *id.* § 2D1.1(c)(4), which the court then reduced by three levels for acceptance of responsibility, *id.* § 3E1.1. With a total offense level of 29 and a criminal history category of I, McKay faced a guidelines imprisonment range of 87 to 108 months. Without explanation, the court held that McKay was subject to a mandatory minimum sentence of 120 months on the drug count. Perhaps the court thought that the aggregation of the drug totals triggered the mandatory minimum. It is also possible that the court applied the mandatory minimum because McKay conceded that the conspiracy involved at least one kilogram of heroin and at least fifty grams of crack, though he did not concede that those amounts were reasonably foreseeable to him. In any event, McKay did not object or seek clarification. The court sentenced him to 120 months on the conspiracy charge and 60 months on the gun charge, to run consecutively.

Davis, who led the conspiracy, received a much stiffer sentence. The district court found him responsible for between 10 and 30 kilograms of heroin. This quantity yielded a base offense level of 36. U.S.S.G. § 2D1.1(c)(2). The court added 4 levels for Davis's role in the offense, U.S.S.G. § 3B1.1(a), added 2 levels for reckless endangerment during flight, *id.* § 3C1.2, and subtracted 3 levels for acceptance of responsibility, *id.* § 3E1.1. The court combined that offense level with Davis's criminal history category of VI to compute a guidelines range of 360 months to life on the conspiracy charge. The court sentenced Davis to 444 months on the conspiracy charge and 60 months on the gun charge, to run consecutively.

The finding of reckless endangerment during flight was based on the testimony at sentencing of the ATF agent who arrested Davis. The agent said he ordered Davis to stop but Davis attempted to run into a house. The agent tried to grab Davis, but Davis pushed him away, pushed away another agent, and ran. The agent gave chase with his gun drawn, and during the chase Davis pulled a gun from his pants. The ATF agent explained:

> At this point I see him reaching around with his left hand behind his back, and I see him drawing the butt of a gun. At this point I tell him--I said, "Stop. I see the gun. Drop the gun. Police." He continues running. At this point I've taken up a stationary position, and I've prepared to fire my weapon. He continues running. He's got his arm extended. He's just about to cant it back towards me, and as he's running, he fumbled the gun, and the gun fell.

Davis argued that the agent's testimony did not necessarily show that he intended to cause harm when he drew the gun; he could have intended simply to dispose of it. The district court disagreed, finding reckless endangerment during flight based on Davis's violence when he first got away from the police and the risk he created by drawing his gun. The court believed that after seeing the gun one of the officers might have shot Davis, the other officer, or someone else in the area.

The other four appellants, Steven Easter, Anthony Glover, Bradford Dodson, and Montrell McSwain, were all convicted on the same conspiracy charge and one § 924(c)(1) count, Easter and Glover after pleading guilty and Dodson and McSwain after trial. Easter and Glover were both subject to a ten-year mandatory minimum on the conspiracy charge. Easter got 192 months and Glover got 156 months. Dodson and McSwain were both subject to a twenty-year mandatory minimum on the conspiracy charge. Dodson got 360 months and McSwain got 240 months. All four received a consecutive five-year term for possessing a gun in furtherance of a drug trafficking crime.

## II. ANALYSIS

### A. McKay

On appeal McKay argues that the district court should not have sentenced him on the basis of any crack. He also contends that the court mistakenly applied a mandatory minimum to his sentence on the drug count. As McKay

views things, the district court applied the mandatory minimum based on the marijuana equivalents for his "share" of the heroin and crack. That is, neither 960 grams of heroin nor 45 grams of crack (the lowest amount the court attributed to McKay under the guidelines) would trigger a 10-year minimum, but 1860 kilograms of marijuana, the aggregate of those amounts following the conversion to marijuana equivalents, would. *See* 21 U.S.C. § 841(b)(1)(A)(i), (iii), (vii). The government makes no attempt to argue that aggregating quantities of different types of drugs to reach a statutory minimum would be proper. Indeed, one circuit has explicitly rejected the practice. *Alaniz v. United States*, 351 F.3d 365, 368 (8th Cir. 2003). Instead, the government argues that a stray remark by the court at sentencing was an explicit finding that McKay was responsible for at least 50 grams of crack, the amount that would trigger the mandatory minimum under § 841(b)(1)(A)(iii).

The government's reading of the court's remark ignores the language and context of the court's statement:

> I think both sides agree that if he is responsible--if I find that he's responsible for the crack cocaine, then that added to the heroin would clearly be over one kilo--well it would be clearly over 50 grams of cocaine, and when you translate that into marijuana and you translate the heroin into marijuana, you come up with a total of--if I were to use the heroin, that translates into 960 kilos of marijuana

The court seemed to refer to 50 grams of crack because, at the time, 50 grams of crack and 1000 kilograms of mari-

juana both required a base offense level of 32. U.S.S.G. § 2D1.1(c)(4) (2006). The court's discussion at that point in the hearing was not about a mandatory minimum; it was about the base offense level. Whatever the court meant, though, this statement preceded the court's explicit finding that the amount of crack attributable to McKay as relevant conduct fell somewhere in the range of 45 to 75 grams. That is, the court expressly held that the amount could have been less than 50 grams.

But none of this matters because both sides mistakenly assume that the crack amount attributed to McKay as relevant conduct under the guidelines was significant for purposes of applying the statutory minimum. In fact, statutory minimums do not hinge on the particular defendant's relevant conduct. In a drug conspiracy, the amount of drugs attributable to any one codefendant as "relevant conduct" for guidelines purposes is limited to the reasonably foreseeable transactions in furtherance of that codefendant's "jointly undertaken criminal activity," U.S.S.G. § 1B1.3(a)(1)(B), but when it comes to the statutory penalties, every coconspirator is liable for the sometimes broader set of transactions that were reasonably foreseeable acts in furtherance of the entire conspiracy. *See United States v. Fox*, No. 07-3830, __ F.3d ___, 2008 WL 4890006, at *7 (7th Cir. Nov. 14, 2008); *United States v. Soto-Piedra*, 525 F.3d 527, 531-32 (7th Cir. 2008); *United States v. Mellen,* 393 F.3d 175, 183-84 (D.C. Cir. 2004); *United States v. Newsome*, 322 F.3d 328, 338-40 (4th Cir. 2003). When the defendant agrees to a jointly undertaken criminal activity that is only a slice of the whole conspiracy, the foreseeable acts taken

in furtherance of that slice can be a subset of the foresee-able acts taken in furtherance of the entire conspiracy. *E.g.*, U.S.S.G. § 1B1.3, cmt. 2(c)(3).

So the district court's findings on relevant conduct do not preclude application of the mandatory minimum, as McKay argues. To avoid the mandatory minimum, McKay would have to show that he could not have foreseen that transactions in furtherance of the conspiracy would involve at least 1 kilogram of heroin or at least 50 grams of crack. 21 U.S.C. § 841(b)(1)(A)(i), (iii). McKay conceded that the "overall conspiracy was at least one kilogram of heroin and at least 50 grams of crack," and he conceded that 960 grams of heroin were sold at the drug houses while he was present. It would be frivolous for McKay to argue that he could not have foreseen that other conspirators would sell another 40 grams of heroin on the days that he was not present. Thus, the district court was bound by the ten-year mandatory minimum. Because McKay was actually given the minimum, we need not consider his secondary argument about the amount of crack attributed to him as relevant conduct under the guidelines. Even if that amount should have been lower, the district court would not have been permitted to impose a sentence below the mandatory minimum. *See United States v. James*, 487 F.3d 518, 530 (7th Cir. 2007); *United States v. Duncan*, 479 F.3d 924, 930 (7th Cir. 2007).

## B. Davis

Davis's first argument on appeal is that his offense level should not have been increased for reckless endangerment

during flight. The increase is applied where "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The district court explained that when Davis reached for his gun, no matter what his intent was in doing so, he created a substantial risk of harm warranting the increase because he risked causing one of the officers to shoot and possibly hit another officer, or Davis, or some other person in the area. Considering the danger to Davis was error, U.S.S.G. § 3C1.2, cmt. 4, but the error was harmless because simply reaching for a loaded gun is enough to create a substantial risk of serious bodily injury to another person. *See United States v. Robinson*, 537 F.3d 798, 802 (7th Cir. 2008) (applying analogous increase under U.S.S.G. § 3A1.2(c)(1)); *United States v. Lee*, 199 F.3d 16, 20 (1st Cir. 1999) (same); *United States v. Bell,* 953 F.2d 6, 10 (1st Cir. 1992) (suggesting that § 3C1.2 would apply if defendant had reached for loaded gun when confronted by police). And the risk is even greater where, as here, the person handling the gun is also running at full speed.

Davis also contests the district court's finding on drug quantity. He argues that the evidence before the district court was enough only to approximate drug quantity for the short period of time in 2005 when the conspirators were under surveillance and that the court erred when it used that quantity to estimate the amounts he sold as far back as 2002 before the government's investigation began. Davis concedes, as he must, that the district court was permitted to make a reasonable estimate of drug quantity. *See* U.S.S.G. § 2D1.1, cmt. 12; *United States v. Eschman*, 227 F.3d

886, 890-91 (7th Cir. 2000). His argument is that the court's estimate did not have a sufficiently reliable basis. *See, e.g., Eschman*, 227 F.3d at 890-91; *United States v. Acosta*, 85 F.3d 275, 282-83 (7th Cir. 1996). But Davis ignores several pieces of evidence that supported the court's extrapolation: one gang member testified to the operation of the conspiracy before 2005, evidence recovered from the trash showed that the gang operated several drug houses, several members of the gang were arrested between 2002 and 2005 on drug charges, and several buyers testified that they bought heroin from the gang in that time period. Based on all that evidence, which the district court was entitled to credit, *see, e.g., United States v. Abdulahi*, 523 F.3d 757, 761 (7th Cir. 2008), the court's conservative estimate of the amount of crack sold during the conspiracy was not clear error, *id.*

## C. Easter, Glover, Dodson, and McSwain

Dodson and McSwain accepted the court's invitation to respond to their lawyers' motions to withdraw, but Easter and Glover did not. *See* CIR. R. 51(b). Our review is limited to the potential issues identified in the supporting briefs of counsel and in the submissions from Dodson and McSwain. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002). All of those issues are frivolous and only one merits discussion. That one issue, pressed by McSwain in his Rule 51(b) response, is based on the Second Circuit's recent interpretation of 18 U.S.C. § 924(c)(1) in *United States v. Whitley*, 529 F.3d 150, 158 (2d Cir. 2008). Section 924(c)(1) provides in relevant part:

*Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law,* any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added). In *Whitley*, the Second Circuit read the italicized language—the "except" clause—to preclude a sentencing court from imposing an additional term of imprisonment under § 924(c)(1) if that term would be shorter than a greater statutory minimum required by another count of conviction, including the crime of violence or drug trafficking crime underlying the § 924(c)(1) count. Under what the Second Circuit called a literal reading of the "except" clause, the district court here was not free to impose a consecutive five-year term on the § 924(c)(1) counts because each of the defendants was

subject to a mandatory term of 10 or 20 years on the conspiracy count and that mandatory term was "a greater minimum sentence . . . otherwise provided by . . . any other provision of law." *Whitley*, 529 F.3d at 153.

Three circuits had published opinions parsing the "except" clause before *Whitley*, and each opinion rejected the argument later adopted by the Second Circuit. *United States v. Jolivette*, 257 F.3d 581, 587 (6th Cir. 2001); *United States v. Studifin*, 240 F.3d 415, 423 (4th Cir. 2001); *United States v. Alaniz*, 235 F.3d 386, 389 (8th Cir. 2000); *see also United States v. Collins*, 205 Fed. App'x 196, 198 (5th Cir. 2006) (unpublished). According to the Eighth Circuit, Congress added the "except" clause to subsection (c)(1)(A) in order to reconcile the penalty ranges of that paragraph with the greater penalties set out in subsections (c)(1)(B) and (c)(1)(C). *Alaniz*, 235 F.3d at 389. That court further held that the "except" clause refers only to "the firearm-related conduct proscribed either by § 924(c)(1) or 'by any other provision of law'" and not to the underlying drug trafficking crime or crime of violence. *Id.* The Fourth Circuit echoed the Eighth Circuit's position, explaining that it read the "except" clause "as simply reserving the possibility that another statute or provision might impose a greater minimum consecutive sentencing scheme for a § 924(c) violation, and not as negating the possibility of consecutive sentencing." *Studifin*, 240 F.3d at 423. After *Whitley*, the First Circuit described that decision as "suspect on its face" and cited the contrary precedent with approval. *United States v. Parker*, __ F.3d ___, 2008 WL 5006123, at *5-6 (1st Cir. Nov. 26, 2008). In upholding the consecutive penalty under § 924(c)(1) in its own case, the

First Circuit distinguished *Whitley* on a narrow factual ground and thus stopped short of explicitly rejecting the Second Circuit's analysis. *Id.* at *6. Nevertheless, we read the First Circuit's opinion as squarely aligned with the majority view.

We also embrace the majority position. Although the issue is one of first impression in this circuit, that does not automatically lead to the conclusion that it is nonfrivolous and cannot be resolved in an *Anders* posture without briefing. *See United States v. Lopez-Flores*, 275 F.3d 661, 662-63 (7th Cir. 2001); *see also United States v. Morris*, __ F.3d ___, 2008 WL 5101636 (7th Cir. Dec. 5, 2008). As we have explained, an issue of first impression "may be frivolous because, for example, of the clarity of statutory language, or even as a matter of common sense." *Lopez-Flores*, 257 F.3d at 663. The construction of 18 U.S.C. § 924(c)(1)(A) is such an issue.

We interpret a statute by giving it its most natural reading, *see United States v. Ressam*, 128 S. Ct. 1858, 1860 (2008), and the most natural reading of the "except" clause is that a defendant convicted under § 924(c)(1) shall be sentenced to a term of imprisonment set forth in § 924(c)(1)(A) unless subsections (c)(1)(B) or (c)(1)(C), or another penalty provision elsewhere in the United States Code, requires a higher minimum sentence for *that* § 924(c)(1) offense.

The reading in *Whitley* would be understandable if § 924(c) defined a type of sentencing enhancement meant to require a mandatory minimum sentence when a firearm is used in furtherance of an underlying crime of violence or

drug trafficking crime. If § 924(c) were an enhancement, it might make sense for that requirement to fall away when the underlying crime, or some other count of conviction, requires a greater mandatory minimum.

But § 924(c) does not define an enhancement, it defines a standalone crime, *see Harris v. United States*, 536 U.S. 545, 553 (2002), and the penalty imposed under it must be imposed to run consecutively to any other sentence, 18 U.S.C. § 924(c)(1)(D)(ii); s*ee also United States v. Griffin*, 493 F.3d 856, 868 (7th Cir. 2007); *United States v. Sutton*, 337 F.3d 792, 802 (7th Cir. 2003). A determination of guilt that yields no sentence is not a judgment of conviction at all. And a sentence of zero months cannot be served consecutively to another sentence.

We do not agree with the *Whitley* opinion that we have changed the meaning of the statute's text by reading the "except" clause as limited to penalties for the § 924(c)(1) itself. *See Whitley*, 529 F.3d at 153. On the contrary, the reading found in *Whitley* is the less-natural one. It is difficult to understand why the mandatory minimum penalty that must be imposed for a standalone firearm offense should hinge on the mandatory minimum penalty that must be imposed for *any* other offense of conviction. In the contest between reading the "except" clause to refer to penalties for the offense in question or to penalties for any offense at all, we believe the former is the most natural. *See Parker*, 2008 WL 5006123, at *5.

Where, as here, the plain meaning of the statute is unambiguous, that is the end of the matter. *See CSX Transp., Inc. v. Georgia State Bd. of Equalization,* 128 S. Ct.

467, 474 (2007); *United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008). Nevertheless, it appears to us that the reading given in *Whitley* thwarts Congress's purpose in enacting § 924(c)(1) and causes illogical results. First, the *Whitley* interpretation of § 924(c)(1)(A) nullifies § 924(c)(1)(D)(ii), which requires that a sentence for a § 924(c)(1) count run consecutive to any other sentence. *See Studifin*, 240 F.3d at 423. Second, the purpose of the 1998 amendment of § 924(c)(1) that created the "except" clause was to undo the Supreme Court's holding in *Bailey v. United States*, 516 U.S. 137 (1995), which contracted the application of the statute by adopting a narrow definition for the "use" of a firearm. As the Second Circuit has acknowledged, Congress obviously wanted to expand the reach of § 924(c)(1). *Whitley*, 529 F.3d at 155; *see also Studifin*, 240 F.3d at 421. We do not agree with the Second Circuit, though, that its reading is consistent with that desire. Under that reading, many defendants convicted under § 924(c)(1) would receive no punishment for the conviction. That is no expansion; it is a contraction.

Finally, the *Whitley* opinion tries to explain away the biggest anomaly its reading creates by stressing that, even when its holding precludes any imprisonment for a violation of § 924(c)(1), the district court is free, consistent with the sentencing factors of 18 U.S.C. § 3553(a), to increase the term for the underlying crime of violence or drug trafficking count by the amount that § 924(c)(1) would otherwise require. *Whitley*, 529 F.3d at 155.

This explanation is unconvincing because, first, it seems to rest on the sentencing discretion granted to district

courts by *United States v. Booker*, 543 U.S. 220 (2005), even though that opinion came seven years after the "except" clause was added in 1998. More importantly, though, the Second Circuit's "fix" would invite district courts to tinker with the sentence for one count based on dissatisfaction with the sentence required for another, a practice we have disapproved of in a similar situation. *See United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007) (reversing overall sentence where judge who deemed the required consecutive sentence for a § 924(c)(1) count too high reduced the sentence on a separate count).

In short, the Second Circuit tries to have it both ways. On one hand, *Whitley* holds that Congress intended § 924(c)(1) to require no penalty in certain situations, but, on the other hand, the opinion explains that judges unhappy with that intention may mitigate it by going against Congress's intent and increasing the sentence for another count. That makes no sense and would invite district courts judges to act outside their sentencing discretion.

For all these reasons, it would be frivolous to argue that a district court is barred from imposing any sentence at all for a § 924(c)(1) count when some other count of conviction requires a greater mandatory minimum. Because all the other issues discussed in the briefs of counsel and in the submissions from Dodson and McSwain would be similarly frivolous, we grant the motions to withdraw filed by counsel for Easter, Glover, Dodson, and McSwain and we dismiss all four appeals.

### III. CONCLUSION

We AFFIRM the convictions and sentences of McKay and Davis. We GRANT the motions to withdraw filed by counsel for Easter, Glover, Dodson, and McSwain, and we DISMISS all four appeals.