PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3432
_____

UNITED STATES OF AMERICA

v.

DWAYNE CESPEDES,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 5-09-cr-00216-001)
District Judge: Honorable Lawrence F. Stengel
_____

Argued November 16, 2011

Before:  McKEE, Chief Judge,
RENDELL and AMBRO, Circuit Judges

(Opinion Filed:  December 21, 2011)
_____

Benjamin B. Cooper, Esq.
Office  of Federal Public Defender
840 Hamilton Street
Suite 310, Butz Corporate Center
Allentown, PA  18101

David L. McColgin, Esq.
Nina C. Spizer, Esq.
Christy Unger, Esq.    **[ARGUED]**
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106
    *Counsel for Appellant*

Bernadette A. McKeon, Esq.    **[ARGUED]**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

This case requires us to determine the minimum conduct in which a defendant must engage in order to qualify for a two-level enhancement pursuant to Sentencing Guidelines § 3C1.2 ("§ 3C1.2"), for recklessly creating a substantial risk of death or serious bodily injury to another

person in the course of fleeing from a law enforcement officer.

Defendant Dwayne Cespedes appeals the 144-month sentence he received after pleading guilty to armed robbery and related offenses. Specifically, Cespedes objects to the District Court's enhancement of his sentence for recklessly endangering others while fleeing from law enforcement officers pursuant to § 3C1.2 based purely upon his participation in a conspiracy to commit armed robbery, when he was merely a passenger in the car which was being driven recklessly by his co-conspirator. Given the language of the relevant guideline provisions, we agree with Cespedes and will therefore remand for re-sentencing without the enhancement.

## I. Background

Cespedes and two confederates planned and executed an armed robbery of the KNBT Bank in Whitehall, Pennsylvania. Cespedes and one of his co-conspirators, Michael Grant, entered the bank armed with guns, while the other accomplice, Curtis Whitehurst, waited outside in a getaway car.

While in the bank, Cespedes showed his weapon to the bank's teller, stating "it is what it is," as Grant opened the cash drawer and removed its contents. Cespedes then pointed the weapon at the teller and gave her thirty seconds to tell them where the rest of the bank's money was located. The robbers then removed more money from the bank safe before exiting with $22,467 in cash.

Cespedes and Grant then entered the getaway car driven by Whitehurst. Rather than submit to an attempted traffic stop, Whitehurst engaged police in a high speed chase through residential neighborhoods that spanned two counties. Eventually, Cespedes and Grant got out and fled on foot, after which Whitehurst continued his reckless driving. Whitehurst ignored traffic laws, running stop signs and traveling in the wrong direction on certain roads. At one point during the chase, Whitehurst nearly struck innocent bystanders walking in a crosswalk. Eventually, Whitehurst collided with a parked minivan before being struck by a police cruiser while attempting to reverse.

Cespedes was apprehended after a short pursuit on foot. A gun was recovered under a trash can lid in the vicinity of where Cespedes fled. The bank teller later positively identified him as the robber who pointed a gun at her.

A grand jury returned a three-count indictment against Cespedes, charging him with the following offenses: conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; armed bank robbery, in violation of 18 U.S.C. § 2113(d); and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Cespedes pleaded guilty to all three counts.

Consistent with the recommendation in Cespedes' Presentence Investigation Report, the District Court applied a two-level enhancement for recklessly endangering others while fleeing from law enforcement officers pursuant to §

4

3C1.2.[1]  The District Court rejected Cespedes' objection that the enhancement was improper because he never possessed

---

[1] Section 3C1.2 provides:  "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."

With respect to the enhancement, the Presentence Investigation Report focused upon Whitehurst's conduct during the high speed chase.  The report contained the following justification for the enhancement:

> The defendants led Whitehall Township Police Department on a high speed chase through a residential area of Whitehall, Pennsylvania, and ending in Allentown, Pennsylvania, during mid-morning hours.  During this pursuit, Whitehurst ignored traffic laws, running stop signs and traveling in the wrong direction.  In one instance, Whitehurst almost struck innocent bystanders crossing the road in the crosswalk.  Whitehurst crashed the getaway vehicle into a parked minivan and, while attempting to reverse the vehicle, was struck by a police cruiser.  This reckless conduct created a substantial risk of death or serious bodily injury to both

any control over the recklessly driven getaway vehicle, and had exited on account of Whitehurst's erratic driving. During the sentencing hearing, the District Court reasoned as follows:

> There was a violation of traffic control devices before Mr. Cespedes got out. So, he may not have been in the car for the entire chase, but he certainly was there for part of it, and the chase really was a chase in furtherance of the conspiracy, and he is a conspirator. . . . I understand that he wasn't driving the car, but he's complicit in that. He's as responsible as Mr. Whitehurst is because he is a co-conspirator.

J.A. 85-86. Application of the enhancement raised the Guidelines range for Cespedes' robbery counts from 41-51 months to 51-63 months. When added to the mandatory 84-month sentence for Cespedes' firearm count, the enhancement resulted in a final Guidelines range of 135-147 months. The District Court ultimately sentenced Cespedes to

---

> the law enforcement personnel involving the pursuit, as well as innocent (sic) bystanders along the route. Pursuant to U.S.S.G. § 3C1.2, two levels are added to the offense level.

PSR ¶ 22.

144 months' imprisonment, to be followed by five years' supervised release.

The instant appeal followed.

## II. Jurisdiction and Standard of Review

The District Court possessed jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"When reviewing a sentence, an appellate court must ensure that the district court 'committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "We review the District Court's interpretation of the Sentencing Guidelines *de novo*, and scrutinize any findings of fact for clear error." *Id.* (internal citations omitted).

## III. Discussion

Cespedes presents a two-step argument as to why the District Court erred by enhancing his sentence pursuant to § 3C1.2. First, Cespedes argues that the general conduct provision in Guidelines § 1B1.3(a)(1)(B) ("§ 1B1.3(a)(1)(B)"), which permits sentences to be enhanced based upon the reasonably foreseeable acts of others, does not apply to § 3C1.2. Second, Cespedes argues that Application Note 5 ("Note 5") to § 3C1.2 required the Government to prove that he "aided[,] abetted, counseled, commanded, induced, procured, or willfully caused" Whitehurst's reckless

7

driving, which it failed to do. We will consider each of these arguments in turn.

## A.

As a general matter, the Sentencing Guidelines permit a defendant's sentence to be enhanced based not only upon his own conduct, but also upon the conduct of his criminal confederates. Specifically, § 1B1.3(a) states:

> *Unless otherwise specified*, . . . adjustments in Chapter Three . . . shall be determined on the basis of the following: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), *all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity*, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a) (emphasis added). By including the phrase "unless otherwise specified," the relevant conduct provision admits of exceptions to application of § 1B1.3(a)(1)(B)'s reasonable foreseeability test in certain instances. Cespedes contends that § 3C1.2 is one such instance.

Pursuant to § 3C1.2, a defendant's sentence can be increased two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Note 5 to § 3C1.2 provides the following commentary:

> Under this section, the defendant is accountable for the defendant's own conduct and *for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused*.

*Id.* at cmt. n.5 (emphasis added). The question, then, is whether, by specifically describing when a defendant can be held responsible for reckless endangerment caused by another during flight based upon something other than reasonable foreseeability, § 3C1.2 "specifies otherwise" such that § 1B1.3(a)(1)(B) does not apply.

Note 5 makes clear that, to qualify for an enhancement under § 3C1.2, a defendant must have either himself recklessly endangered others, or "aided[,] abetted, counseled, commanded, induced, procured, or willfully caused" another's reckless endangerment of others. It therefore

9

specifically describes the conduct that will render a defendant responsible for another's recklessness during flight from law enforcement. *See United States v. Chong*, 285 F.3d 343, 346 (4th Cir. 2002). Although set forth in commentary to § 3C1.2, we must consider Note 5 authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 345-46 (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Application of a § 3C1.2 enhancement based upon the reasonable foreseeability of a confederate's reckless endangerment during flight – using the generally applicable standard of § 1B1.3(a)(1)(B) – runs afoul of Note 5's limitation by enhancing a defendant's sentencing without him having engaged in the specific conduct set forth with respect to the reckless endangerment.[2]

---

[2] Further militating in favor of our interpretation is the companion sub-section of § 1B1.3(a)(1). Section 1B1.3(a)(1)(A) allows enhancements to be "determined on the basis of . . . all acts and omissions committed, *aided, abetted, counseled, commanded, induced, procured, or willfully caused* by the defendant." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added). Absent Note 5, then, a defendant's sentence could still be enhanced pursuant to § 3C1.2 if he "aided, abetted, counseled, commanded, induced, procured, or willfully caused" an accomplice's reckless endangerment of others during flight. Note 5 would therefore be unnecessary if not meant to cabin the circumstances in which a defendant's sentence may be enhanced based upon the recklessness of another by preventing application of § 1B1.3(a)(1)(B). The contrary interpretation urged by the Government – that Note 5 was included in § 3C1.2 merely for emphasis and not for any substantive purpose – would render

10

Accordingly, we join all of our sister circuit courts of appeals that have considered this issue in reasoning that "some form of direct or active participation which is consistent with . . . Note [5] is necessary in order for § 3C1.2 to apply." *United v. Cook*, 181 F.3d 1232, 1235 (11th Cir. 1999); *see also Chong*, 285 F.3d at 346; *United States v. Conley*, 131 F.3d 1387, 1390-91 (10th Cir. 1997); *United States v. Lipsey*, 62 F.3d 1134, 1136-37 (9th Cir. 1995). "Thus, in the case of a defendant who was a passenger during a flight from police, a district court 'must specify in the record its reasons for holding [that defendant] responsible for the driver's conduct.'" *United States v. Wilfong*, 475 F.3d

---

Note 5 a mere nullity. *See United States v. Cook*, 181 F.3d 1232, 1236 (11th Cir. 1999).

The Government contends that Illustration (b)(1) to § 1B1.3 supports finding that § 1B1.3(a)(1)(B) applies to the reckless-endangerment-during-flight enhancement. The illustration makes a getaway driver in an armed bank robbery accountable for injuries caused by his co-conspirators during the robbery. *See* U.S.S.G. § 1B1.3 cmt. 2. The Government suggests that "it would be anomalous to hold a participant in a robbery liable for an accomplice's assault on a teller, but create a different rule for an accomplice's reckless endangerment of others during flight, which poses exactly the same danger of bodily injury to innocent persons." Appellee Br. at 17. We disagree. The illustration merely demonstrates how the reasonable foreseeability analysis operates when the relevant conduct provision in § 1B1.3(a)(1)(B) applies. It is not at all instructive with respect to the predicate question of which enhancements § 1B1.3(a)(1)(B) applies to, which is the issue here considered. *See Cook*, 181 F.3d at 1236 n.1.

11

1214, 1220 (10th Cir. 2007) (alteration in original) (quoting *United States v. Young*, 33 F.3d 31, 33 (9th Cir. 1994)).

Here, the District Court relied upon Cespedes' participation in a conspiracy with the reckless getaway driver to enhance his sentence pursuant to § 3C1.2, stating, "He's as responsible as Mr. Whitehurst is because he is a co-conspirator." J.A. 86. The conclusion that a § 3C1.2 enhancement is proper based solely upon a defendant's entry into a conspiracy is inadequate because it does not indicate how that defendant "aided[,] abetted, counseled, commanded, induced, procured, or willfully caused" the recklessness upon which the enhancement is predicated. *See Lipsey*, 62 F.3d at 1136 (deeming the "community of interest among all three defendants in the car to escape" insufficient to justify application of § 3C1.2).

In effect, the District Court enhanced Cespedes' sentence based upon the mere foreseeability of Whitehurst's reckless driving.[3] Pursuant to Note 5, though, the fact that the reckless driving may have been reasonably foreseeable is not determinative. Therefore, the basis upon which the District Court applied § 3C1.2 to Cespedes' sentence was insufficient as a matter of law.

## B.

The Government urges that evidence introduced against Cespedes, along with findings in unrelated portions of the sentencing record, suggest that the District Court properly

---

[3] Indeed, the Government acknowledges in its brief that "part of the district court's remarks focused on the reasonable foreseeability test." Appellee Br. at 18.

12

applied § 3C1.2, even in light of Note 5. However, our consideration of the record as a whole demonstrates that Cespedes' conduct did not qualify him for the reckless-endangerment-during-flight enhancement, as interpreted above.

The proof to which the Government points as demonstrating that Cespedes was responsible for Whitehurst's recklessness primarily relates to the level of planning involved in his offense. The only evidence specific to Cespedes' role in planning the crime was that he learned when best to commit the robbery from a former bank employee with whom he was acquainted. J.A. 113. That by itself, however, is inadequate to justify a § 3C1.2 enhancement because it does not relate at all to Cespedes' responsibility for Whitehurst's recklessness during the getaway. Indeed, the only proof as to how the conspirators prepared for the getaway made clear that Whitehurst obtained the vehicle used to flee the scene from a friend who rented it several days before the robbery. PSR ¶ 11. Cespedes' role in planning the robbery, without more, does not render him accountable for the reckless endangerment of others caused by Whitehurst's reckless driving.

Observations made by the District Court, which the Government argues further support upholding application of the enhancement to Cespedes, suffer from a similar infirmity and do nothing to bolster its position. The District Court explained its determination that Cespedes' offense was particularly disturbing by emphasizing "the circumstances before in planning this, getting the guns, [and] getting the car," as well as the "foot pursuit" that occurred after Cespedes "asked to get out of the car." J.A. 113-114. Again, though, these findings do not demonstrate anything about Cespedes'

13

conduct that would show that he "aided[,] abetted, counseled, commanded, induced, procured, or willfully caused" Whitehurst's reckless endangerment of others during flight from the police. Since there is no evidence of any such conduct here, the enhancement does not apply by its terms.

Proof indicating only that conspirators collectively planned a robbery that led to a high speed chase is inadequate to qualify each passenger in the getaway vehicle for a reckless-endangerment-during-flight enhancement. *See, e.g.*, *United States v. Franklin*, 321 F.3d 1231, 1236-37 (9th Cir. 2003) (finding that inclusion of getaway cars as part of robbery plan does not demonstrate a defendant's responsibility for reckless endangerment). Therefore, because the evidence and findings as to Cespedes' involvement in the reckless getaway lacked specificity as to what rendered him responsible for Whitehurst's reckless driving, we hold that the Government did not satisfy its burden of proving him subject to § 3C1.2, i.e., it did not show that Cespedes' conduct constituted a "form of direct or active participation which is consistent with . . . Note [5]." *Cook*, 181 F.3d at 1235.

"[W]here the government has the burden of production and persuasion as it does on issues like enhancement of the offense level . . . , its case should ordinarily have to stand or fall on the record it makes the first time around [and it] should not normally be afforded a second bite at the apple." *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir. 1995) (citation and internal quotation marks omitted). Therefore, our conclusion prohibits application of the reckless-endangerment-during-flight enhancement to Cespedes' sentence upon resentencing by the District Court.

14

## IV. <u>Conclusion</u>

In sum, the evidence and the form of the District Court's findings make it evident that Cespedes' sentence was erroneously enhanced pursuant to § 3C1.2. We therefore vacate the sentence and remand to the District Court for resentencing without the enhancement.