NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0040n.06

No. 12-5411

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 07, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Plaintiff-Appellee, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN TASAKI, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: COOK and WHITE, Circuit Judges; and SHARP, District Judge.[*]

**HELENE N. WHITE**, Circuit Judge. Jonathan Tasaki appeals the 100-month sentence imposed following his guilty-plea conviction of felon in possession of a firearm, 18 U.S.C. § 922(g), claiming procedural error in the application of the enhancement for reckless endangerment during flight. U.S.S.G. § 3C1.2. We AFFIRM.

**I.**

On April 18, 2011, officers observed a vehicle traveling at a high rate of speed in Memphis, Tennessee. They initiated a traffic stop, but the vehicle continued to drive for approximately a half mile before coming to a stop. Immediately upon stopping, the

---

[*]The Honorable Kevin H. Sharp, United States District Judge for the Middle District of Tennessee, sitting by designation.

occupants of the vehicle, driver Courtney Chambers and passenger Jonathan Tasaki, jumped from the vehicle and ran from the officers. The officers pursued them and observed Tasaki reach into his pocket and retrieve a firearm. Tasaki threw the firearm and an empty thirty-round magazine to the ground. The officers apprehended Tasaki shortly thereafter and found an additional sixteen-round magazine in his pocket. The gun was recovered and found loaded with sixteen rounds.

Tasaki pled guilty, without a plea agreement, to a single count of felon in possession of a firearm. The PSR recommended application of a two-level enhancement for reckless endangerment during flight, § 3C1.2, to which Tasaki objected. Section 3C1.2 of the sentencing guidelines provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." After hearing the parties' arguments, the court applied the reckless endangerment during flight enhancement because: (1) Tasaki reached for a gun while he was running away from police, thus creating the risk that the pursuing officers would perceive a threat and discharge their own weapons, and (2) Tasaki discarded a loaded firearm in a residential area, thus creating a risk of serious injury to other individuals in the area. The court conceded that Tasaki's conduct was not as severe as it could have been because he did not point his weapon at the police, but concluded that Tasaki's conduct was sufficient to create a "substantial risk of serious bodily injury." With the two-level enhancement Tasaki's total offense level was 25. His criminal history category

V resulted in a restricted[1] guidelines range of 100 to 120 months' imprisonment. The court

imposed a within-guidelines sentence of 100 months' imprisonment.

**II.**

We review criminal sentences for both substantive and procedural reasonableness.

*Gall v. United States*, 552 U.S. 38, 51 (2007). "Reasonableness is determined under the

deferential abuse-of-discretion standard." *United States v. Battaglia*, 624 F.3d 348, 350 (6th

Cir. 2010). In reviewing for reasonableness, this court must "ensure that the district court

committed no significant procedural error, such as failing to calculate (or improperly

calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider

the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to

adequately explain the chosen sentence[.]" *Gall*, 552 U.S. at 51. "This Circuit reviews a

district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact

at sentencing for clear error." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012)

(internal quotation marks omitted). A factual finding is clearly erroneous when this court "is

left with the definite and firm conviction that a mistake has been committed." *United States

v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011). Although what constitutes reckless

endangerment during flight is a mixed question of law and fact, it is highly fact-based and

---

[1]The maximum sentence under § 924(a)(2) is ten years, thus reducing the upper
boundary of Tasaki's guidelines range from 125 months to 120 months.

3

significant deference to the district court is required. *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005).

Tasaki argues that his conduct did not amount to reckless endangerment under the guidelines. He emphasizes that he did not point his gun at the police, and that the government did not present evidence showing that there were other persons around when he discarded his weapon.

Tasaki principally relies on *United States v. Cespedes*, 663 F.3d 685 (3d Cir. 2011). In *Cespedes*, the defendant, along with two co-conspirators, robbed a bank. *Id.* at 687. When the police attempted to stop their vehicle, Cespedes and his co-conspirators engaged the police in a high-speed chase through residential neighborhoods. *Id.* Eventually, Cespedes got out of the vehicle and fled on foot. *Id.* The police apprehended him after a short pursuit and discovered a gun under a trash-can lid in the vicinity of where he fled. *Id.* The district court applied the reckless endangerment during flight enhancement despite the fact that Cespedes did not drive the car and claimed to have left the vehicle because of his co-conspirator's erratic driving. *Id.* at 688.

The Third Circuit rejected the government's argument that Cespedes was responsible for the erratic driving of his co-conspirator, concluding that there was no evidence in the record demonstrating that Cespedes "aided or abetted, counseled, commanded, induced, procured, or willfully caused" his co-conspirator's reckless driving as required by

Application Note 5 to § 3C1.2. *Id.* at 690. Although the court never mentioned the gun in discussing the government's arguments in favor of the enhancement, Tasaki argues that the court's factual recitation indicates that it considered the gun's presence and deemed the discard of the gun "an insignificant inquiry." We will not draw such an inference where the court is silent; *Cespedes* is simply not on point.

Tasaki also relies on a decision by the Supreme Court of Kentucky, *Bell v. Commonwealth of Kentucky*, 122 S.W.3d 490 (Ky. 2003). In *Bell*, a pursuing police officer noticed a black object fall away from the defendant as he ran through a residential neighborhood. *Id.* at 492–93. Once the officer caught the defendant, he retraced his steps and found that the dropped object was a semiautomatic pistol loaded with ten hollow-point bullets. *Id.* A jury found the defendant guilty of fleeing or evading police in the first degree, which had as an element causing or creating "a substantial risk of[] serious physical injury or death to any person or property." Ky. Rev. Stat. Ann. § 520.095(1)(b)(2). The Kentucky Supreme Court considered whether there was sufficient evidence to convict the defendant. *Bell*, 122 S.W.3d at 497–98. The court rejected the argument that the gun had a propensity to discharge under the circumstances of the flight. *Id.* at 498. The court also rejected the argument that a substantial risk was created that the police would initiate an armed confrontation, observing that the pursuing officer found it unnecessary to draw his weapon. *Id.* at 498–99. The court concluded that there was not enough evidence in the record to support a finding that the defendant's flight created a substantial risk of death or serious

physical injury. *Id.* at 499. We note that because *Bell* involved a challenge to the defendant's conviction, rather than his sentence, the applicable standard was proof beyond a reasonable doubt, rather than a preponderance of the evidence as required in applying the sentencing guidelines. *See United States v. Gates*, 461 F.3d 703, 707–08 (6th Cir. 2006). Further, the handgun fell from the defendant's pants; the officer never saw it in the defendant's hand.

The government responds by citing *United States v. May*, 430 F. App'x 520 (6th Cir. 2011). In *May*, the Sixth Circuit upheld the district court's application of the enhancement for reckless endangerment. *Id.* at 527. May ran from police officers after they approached him. *Id.* at 521. He entered an apartment building and officers observed him drop a weapon onto a second-floor balcony before entering a third-floor apartment. *Id.* The occupants of the second-floor apartment let officers in and they recovered a loaded firearm from the balcony. *Id.* May was apprehended a short time after. *Id.* at 522.

The district court applied the reckless endangerment during flight enhancement after noting that the firearm "was discarded in a housing project, where children, teenagers or others are likely to be." *Id.* at 525 (internal quotation marks omitted). The court concluded that the discard of a firearm in an area where pedestrian traffic is present is enough to support the application of the enhancement. *Id.* at 526. Affirming the sentence, this court noted: "Certainly, it was reckless to discard a loaded firearm in a public-housing complex where it would likely be found by someone. . . . Moreover because it was possible that someone,

whether an adult or child, would recover and discharge the firearm, May created a *risk* of death or serious bodily injury." *Id.* at 526 (emphasis in original). The court dismissed May's argument that the enhancement should not apply because the gun was quickly recovered by the police: "[T]he fact that the weapon was quickly recovered by the police does not alter this calculus because the defendant still created 'a risk that the weapon could be found or otherwise utilized by another individual.'" *Id.* at 527 (quoting *United States v. Howard*, 301 F. App'x 446, 449 (6th Cir. 2008)).

The government also cites cases from other circuits that have upheld application of § 3C1.2 in similar circumstances. For example, in *United States v. Easter* defendant Davis was running from an ATF agent when he was ordered to stop. 553 F.3d 519, 521–22 (7th Cir. 2009). Davis pushed the agent away and pulled a gun from his pants during the chase. *Id.* at 522. The agent testified that Davis appeared about to point the gun at the agent when he fumbled the weapon and dropped it. *Id.* The district court applied the enhancement explaining that, "when Davis reached for his gun, no matter what his intent was in doing so, he created a substantial risk of harm warranting the increase because he risked causing one of the officers to shoot and possibly hit another officer, . . . or some other person in the area." *Id.* at 523–24. The Seventh Circuit agreed, noting that "the risk is even greater where, as here, the person handling the gun is also running at full speed." *Id.* at 524. *See also United States v. Grate*, 81 F. App'x. 451, 453 (4th Cir. 2003) (per curiam) (defendant drew a firearm and ran through a crowded parking lot during pursuit); *United States v. Hill*, 583 F.3d 1075,

1078 (8th Cir. 2009) (defendant attempted to retrieve a gun from his waistband during pursuit); *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003) (defendant hid a gun in a water turn-off hole near children); *United States v. Jefferson*, 58 F. App'x 8, 9–10 (4th Cir. 2003) (per curiam) (defendant dropped a loaded firearm in a residential community).

Tasaki is correct that none of these cases involves the exact fact situation presented here; and, we acknowledge that Tasaki did not point his gun at the police or discard the weapon in the presence of children or other individuals. Nevertheless, the district court sufficiently supported its finding that Tasaki's reaching for the gun while the police pursued him and discarding it in a residential neighborhood created a substantial risk of serious bodily injury to the officer, and anyone potentially present or finding the firearm. *See May*, 430 F. App'x at 526–27.

Accordingly, we AFFIRM Tasaki's sentence.