**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1703
_____

UNITED STATES OF AMERICA

v.

HOPE K. KANTETE
a/k/a The Lady

HOPE K. KANTETE,
                                                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-12-cr-00388-001)
District Judge:  Honorable Robert B. Kugler

_____

Submitted under Third Circuit LAR 34.1(a)
on March 27, 2015

Before:  GREENAWAY, JR., KRAUSE, and GREENBERG, *Circuit Judges*.

(Filed: May 7, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge.*

This appeal arises out of a large criminal conspiracy to transport stolen motor vehicles. Appellant Hope Kantete challenges the District Court's calculation of the applicable range under the U.S. Sentencing Guidelines (the "Guidelines") and the procedural and substantive reasonableness of her sentence. For the reasons set forth below, we will affirm.[1]

## I.    Background

Kantete owned and operated Safari Auto Sales, a car dealership in Jersey City, New Jersey, but did not limit her stake in the automotive trade to legitimate business. Instead, Kantete worked with several sources to obtain stolen vehicles—typically high-end luxury vehicles, such as Range Rovers, Mercedes-Benzes, BMWs, and Porsches—and employed other individuals to change the Vehicle-Identification Numbers ("VINs") and obtain counterfeit Certificates of Title. She also located customers for those vehicles, including many in Africa.

Kantete was ultimately convicted of one count of conspiracy to transport stolen motor vehicles and ten counts of transportation of stolen motor vehicles, in violation of 18 U.S.C. §§ 371 and 2312. At sentencing, the District Court determined that Kantete was responsible for a loss amount between $2.5 million and $7 million, resulting in an

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over Kantete's challenge to her sentence pursuant to 18 U.S.C. § 3742(a).

eighteen-level Guidelines enhancement. The District Court also found applicable a number of other enhancements that resulted in a Guidelines range of 262 to 327 months' imprisonment. After considering the parties' arguments, the District Judge sentenced Kantete to the bottom of that range, ordering her to serve 262 months' imprisonment and concurrent three-year terms of supervised release and to pay restitution in the amount of $346,936.91.

## II. Discussion

On appeal, Kantete challenges her sentence on three grounds: (1) the loss amount attributable to her; (2) the applicability of certain Guidelines enhancements; and (3) the procedural propriety and substantive reasonableness of the sentence. We examine each argument in turn.

### A. Loss Amount Calculation

We review a district court's loss calculation under the Guidelines for clear error. *United States v. Dullum*, 560 F.3d 133, 137 (3d Cir. 2009) (citing *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007)). It is well-settled that a sentencing court need only make a "reasonable estimate" of loss based on the available evidence in the record, and the court is not limited to considering conduct that was formally charged. *See United States v. Fumo*, 655 F.3d 288, 310 (3d Cir. 2011) (citing *Ali*, 508 F.3d at 145); *see also* U.S.S.G. § 1B1.3 cmt. background ("Conduct that is not formally charged or is not an

element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."). The sentence may take account not only of amounts directly attributable to the defendant's own conduct, but also losses resulting from the conduct of others when such losses are "(1) in furtherance of the jointly undertaken activity; (2) within the scope of the defendant's agreement; and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." *United States v. Duliga*, 204 F.3d 97, 100 (3d Cir. 2000).

Here, the District Court did not err, much less clearly err, in finding "well over $2.5 million" in losses attributable to Kantete. (App. 93.) Kantete does not dispute that the ten vehicles that were the subjects of the substantive counts at trial resulted in a loss of about $483,000, and the Government presented evidence from cooperating witnesses, wiretaps, and other sources at sentencing that Kantete was directly and personally involved with transporting another sixty stolen vehicles worth between $2,139,040 and $2,725,805 during the course of the conspiracy. Thus, we will not disturb the District Judge's loss calculation on appeal.

### B. Guidelines Enhancements

We turn next to Kantete's challenges to three of the Guidelines enhancements applied to her sentence. We exercise plenary review of a district court's interpretation of the Guidelines, but we review for clear error its factual findings and "whether the agreed-

upon set of facts fit within the enhancement requirements." *United States v. Fish*, 731 F.3d 277, 279 (3d Cir. 2013).

### 1.    Reckless Risk of Serious Bodily Injury

Kantete argues that the District Court erred in imposing an increase under § 2B1.1(b)(15), which provides for a two-level enhancement if, among other things, the offense involved "the conscious or reckless risk of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(15).  We perceive no error.

The District Court applied the enhancement because of two thefts that each involved a risk of death or serious bodily injury.  The first was an armed carjacking of a 2009 Jaguar that one of Kantete's co-conspirators admitted re-tagging for her.  The second involved a stolen vehicle that Kantete agreed to purchase in a recorded conversation with "Thugger," a member of the Bloods gang, who advised Kantete that the driver of the stolen vehicle "was getting chased by the police and . . . side-swiped . . . another car."  (Supplemental App. 62.)

Kantete does not dispute that these incidents involved a reckless risk of serious bodily injury.  Rather, her principal argument against the application of the enhancement is that the District Court placed undue emphasis on these incidents when the bulk of the other thefts did not involve such a risk.  However, Kantete provides no support for the

5

proposition that § 2B1.1(b)(15) does not apply where some portions of the offense involve a reckless risk of serious bodily injury but others do not, and § 2B1.1(b)(15) requires only that the offense "involved" a reckless risk of serious bodily injury, not that every instance of conduct in the course of the offense have done so.

Kantete also contends that "the Government could not even confirm that Kantete was specifically involved with [the] carjacking." (Appellant's Br. 28.) But under § 1B1.3(a)(1)(B), Kantete need not have been present during the carjacking for it to be considered part of the relevant offense conduct. She is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," and there is substantial evidence in the record to fulfill each of § 1B1.3(a)(1)(B)'s requirements. *See* U.S.S.G. § 1B1.3(a)(1)(B). As explained in the Presentence Investigation Report ("PSR"), because Kantete "order[ed] high-end vehicles, many of which can only be operated through a 'smart key,'" it was "reasonably foreseeable that one of the ways thieves got vehicles with smart keys was through carjacking." (PSR ¶ 135.) Moreover, Kantete does not contend that the District Court failed to make sufficient findings as to the elements of § 1B1.3, and any such objection is therefore waived. *See United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a

6

passing reference to an issue will not suffice to bring that issue before this court."

(internal quotation marks omitted).[2]

## 2. Sophisticated Means

Kantete also objects to the District Court's imposition of a two-level enhancement

under U.S.S.G. § 2B1.1(b)(10)(C) due to her use of "sophisticated means," i.e.,

"especially complex or especially intricate offense conduct pertaining to the execution or

concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B).

Again, the record fully supports the enhancement. The District Court found that

the conspiracy involved not only stealing over seventy vehicles, but doctoring titles,

altering VINs, and preparing documents for export. *See United States v. Fofanah*, 765

F.3d 141, 147 (2d Cir. 2014) (holding that moving stolen cars across jurisdictions and

abroad is evidence of a scheme's sophistication). In addition, the District Judge found

Kantete took "great pains to conceal her role" in the conspiracy, using multiple pre-paid

telephones registered to other people or fictitious subscribers; employing various co-

---

[2] Because we uphold this enhancement on the basis of the carjacking alone, we need not consider whether a § 2B1.1(b)(15) enhancement would have been appropriate for the high-speed chase that occurred *after* a car was stolen. *See United States v. Hall*, 71 F.3d 569, 571 (6th Cir. 1995) (holding that the provision that is now § 2B1.1(b)(15) applies "only where the risk of bodily injury results *from the* [*crime*] *itself* and not from events that happen while fleeing from the crime," unlike § 3C1.2, which penalizes reckless endangerment during flight); *see also United States v. Cespedes*, 663 F.3d 685, 689-91 (3d Cir. 2011) (rejecting the "[a]pplication of a § 3C1.2 enhancement based upon the reasonable foreseeability of a confederate's reckless endangerment during flight—using the generally applicable standard of § 1B1.3(a)(1)(B)"—because § 3C1.2 requires "some form of direct or active participation" (internal quotation mark omitted)).

conspirators to perform different parts of the scheme and keeping contact among them to a minimum; and avoiding touching either the stolen vehicles or their keys. (App. 94.) The District Court's conclusion that Kantete's offense involved sophisticated means was thus not clear error.

### 3. Leadership Role

Kantete also challenges the District Court's application of a four-level enhancement to her sentence under § 3B1.1(a) for her role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). While Kantete describes herself and others involved in the scheme as "independent contractors" (Appellant's Br. 30), the record supports the District Court's finding that Kantete "called the shots," as she "ordered and negotiated over the ordering of the stolen cars; made sure that the titles were done; made sure that the decals were changed; made sure the cars were cleaned out of anything that [could] identify the prior owner of the car"; prepared the cars for shipment; and "made sure that export documents were filled out so the cars could leave this country." (App. 96.) Indeed, as the Government observes, "if many of the individuals that Kantete dealt with were 'independent contractors,' then Kantete was the general manager or general contractor

who led the scheme and to whom the 'independent contractors' reported." (Appellee's Br. 30.) Accordingly, the District Court did not err in imposing this enhancement.

### C. Procedural and Substantive Reasonableness

Finally, Kantete argues that her sentence was procedurally flawed and substantively unreasonable. Specifically, Kantete argues the District Court committed procedural error by giving insufficient weight to her personal background, including horrific experiences she endured growing up in Rwanda, and by failing to consider what was "just punishment" for her offenses under 18 U.S.C. § 3553(a)(2). When faced with this sort of challenge, we review whether the District Court gave "meaningful consideration to the § 3553(a) factors." *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011) (quoting *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010)) (internal quotation marks omitted).

Here, the District Judge addressed Kantete's background on the record, noting that her "life in Africa . . . was just awful, and . . . we're all fortunate and blessed not to have shared those kinds of experiences," but also recognizing that Kantete went on to move to America and marry a doctor who helped her start a legitimate business before she began committing crimes. (App. 105.) The District Judge also explicitly addressed the nature and circumstances of the offense, including that Kantete was on probation at the time, the potential for danger, and the impact on victims of the offense. It is therefore clear that

9

the District Court gave meaningful consideration to both Kantete's personal background and the "just punishment" factor.

Turning to the substantive challenge, Kantete contends that the District Court placed undue emphasis on the single instance of carjacking because of an unrelated carjacking in Short Hills, New Jersey, which was reported in the news a few months before Kantete's sentencing. This argument amounts at most to speculation, however, and Kantete ultimately asserts only that "the District Court *may* have been prejudiced by the Short Hills shooting." (Appellant's Br. 37 (emphasis added).)

In fact, the District Judge did not refer to any other specific case besides Kantete's, but rather, after recounting the testimony of Kantete's victims, recognized that car thefts and carjackings had become a serious problem in northern New Jersey and that "Congress has provided some severe penalties" for such crimes. (App. 106.) It was not improper for the District Judge to consider these factors in determining the need for deterrence and the need to protect the public. In any event, the District Judge was not unduly focused on the single incident of carjacking tied to Kantete, as the record clearly reflects consideration of "the total number of cases and cars stolen, the total number of victims," and the particular stories of how victims of non-carjacking thefts "described finding that the[ir] car[s] had been stolen and what that meant to them." (*Id.*)

Kantete also urges that her sentence was substantively unreasonable because it afforded "minimal consideration of her personal and familial history"; imposed a lengthy

sentence for a case "essentially involving non-violent property crimes"; held her "accountab[le] for the carjacking absent direct proof linking her to that event"; and found "sophistication and planning in her criminal conduct where none really exists." (Appellant's Br. 35-36.) These arguments lack merit. We will affirm a sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Wright*, 642 F.3d at 152 (quoting *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc)) (internal quotation mark omitted). Further, "[s]entences that fall within the applicable Guidelines range are more likely to be reasonable" than those that do not. *United States v. Woronowicz*, 744 F.3d 848, 852 (3d Cir. 2014) (quoting *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007)) (internal quotation mark omitted). In light of her extensive criminal activity and the fact that she was sentenced to the bottom of the applicable Guidelines range, Kantete cannot satisfy her heavy burden of showing that "no reasonable sentencing court" would have imposed the sentence chosen by the District Court.

## III. Conclusion

For the reasons stated above, we will affirm the judgment of conviction.